**In re STATEWIDE POOLS, INC., Debtor.**

**Bankruptcy No. 2–86–04302.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 21, 1987.

Daniel F. Carmack, Columbus, Ohio, for the Estate.

Joseph A. Giampapa, Columbus, Ohio, for Camalloy, Inc.

Robert J. Sidman, Vorys, Sater, Seymour and Pease, Columbus, Ohio, for Recreonics Corp.

## ORDER OVERRULING OBJECTIONS AND GRANTING APPLICATION FOR AUTHORITY TO EMPLOY SPECIAL COUNSEL

BARBARA J. SELLERS, Bankruptcy Judge.

Daniel F. Carmack, the duly-appointed trustee for this Chapter 7 bankruptcy estate (the "Trustee") has applied to the Court for authority to employ James H. Tilberry as special counsel for the Trustee for two specific matters. That application was opposed by Camalloy, Inc. ("Camalloy") and Recreonics Corporation ("Recreonics") and was heard by the Court. Although Recreonics was present at that hearing by its appearance for another matter in this case, it asserted a lack of notice of the Trustee's application and, with leave of court, filed its objection subsequent to that hearing date. Tilberry also filed an affidavit in support of his employment subsequent to that hearing with the representations required by Bankruptcy Rule 2014 and L.B.R. 4.3(c).

The Trustee seeks to have Tilberry represent him for the limited purpose of collecting certain of the debtor's accounts receivable and for the continued pursuit of a lawsuit against Recreonics. Tilberry has represented the debtor prior to the filing of this bankruptcy case and is also a creditor of this estate. Tilberry's claim against the estate is secured by a lien against the debtor's accounts which is apparently first

in priority. That secured claim, asserted in the amount of $98,147.46, arose as a result of legal services previously performed by Tilberry for the debtor in the litigation against Recreonics.

With the assistance of a former officer of the debtor for whom Tilberry also has served as counsel, Tilberry hopes to collect at least $230,000 of the debtor's accounts receivable. In return for his efforts, Tilberry will retain 25% of the amounts collected. Any portion of that fee representing services for collection of the receivables against which Tilberry's lien operates will be applied against Tilberry's claim and will not be an additional charge to the estate. In essence, Tilberry is not charging any fee for collecting the accounts subject to his lien. Tilberry initially plans to use the funds generated by his percentage fee to fund the reinstatement of the litigation against Recreonics in federal court in Indiana. If that litigation is successful, Tilberry proposes to retain, as a fee for his services in that action, 15% of any recovery in that lawsuit.

Camalloy's objection is only to Tilberry's employment for the accounts receivable collections. Camalloy expressed concern about substantiation of the amount of the debtor's obligation to Tilberry, his "disinterestedness" given his lien position, and the availability of protection for junior lienholders. Camalloy holds a third lien against the debtor's accounts, junior to Tilberry and to a statutory lien in favor of The United States of America, Internal Revenue Service.

The other objector, Recreonics, is the subject of the Indiana federal court litigation sought to be recommenced. Following approximately four years of discovery, that lawsuit was dismissed without prejudice during the pendancy of this bankruptcy case. Recreonics objects to Tilberry's employment on several grounds centering about Tilberry's relationship with Marc Blais, the former officer of the debtor represented at times by Tilberry who is to assist in the collection of the accounts; the alleged adverse nature of Tilberry's interest to that of the estate on behalf of which his employment is sought; Tilberry's general involvement in drafting certain of the Debtor's documents; and his lack of "disinterestedness" pursuant to 11 U.S.C. § 327. For reasons stated below, the Court overrules the objections of Camalloy and Recreonics and authorizes Tilberry's employment.

Although the affidavit filed by Tilberry in support of his employment failed to disclose his status as a secured creditor of this estate, the Court finds, as a preliminary matter, that such information was set forth in the Trustee's application, was noticed to all creditors, and was discussed at the hearing on this matter. The Court finds further that the amount of Tilberry's secured claim against the estate is subject to specific proof should any question of the accuracy of the amount asserted be raised by objection to the claim. The right of a party to object to Tilberry's claim is not affected in any manner by this specific employment authorization. In addition, Tilberry has volunteered, and this Court will order, that the gross amounts of any of the debtor's accounts collected be reported on a quarterly basis to the Court, and to Camalloy and The Internal Revenue Service, as holders of junior liens against those accounts. Such provision should satisfy Camalloy's concerns in that regard.

The more difficult issues raised by the objections of Camalloy and Recreonics are the allegations of lack of disinterestedness, conflict of interest and inappropriate fee splitting. In addition to the general guidelines of the Code of Professional Responsibility as adopted in Ohio and applicable to attorneys practicing in this Court by District-Wide Order 81-1, the application of a trustee in bankruptcy to retain counsel is governed by 11 U.S.C. § 327. The general rule, as set forth in § 327(a) states:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the

trustee in carrying out the trustee's duties under this title.

That general provision, by its terms, is subject to variations authorized by § 327(c) and (e) which state:

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Although "interested", "adverse" and "conflict of interest" are separate notions, distinctly used within the subsections of § 327, such terms often describe overlapping concerns. As a creditor, Tilberry by definition, is an "interested" person. 11 U.S.C. § 101(13)(A). Because the estate's primary focus is obtaining the greatest return for unsecured creditors, even if the validity of secured claims must be attacked for that purpose, the security interest Tilberry took to secure payment of his fees causes him to have an interest which may be adverse to that of the bankruptcy estate generally. Depending upon his relationship with Blais, Tilberry may also be "interested" pursuant to 11 U.S.C. § 101(13)(E). Further, his role in drafting certain of the debtor's documents may give him an interest in preserving the integrity of certain transfers effectuated by those documents. That interest could be adverse to the estate or produce an actual conflict should such transfers be challenged. Therefore, the task of the Court in examining this application is to determine, on a factual basis, whether any of Tilberry's interests disqual-

ify him from appointment. *In re Martin,* 817 F.2d 175 (1st Cir.1987).

The Court believes where employment is sought only for specific limited purposes, that subsection (e) of § 327 not only eliminates the disinterestedness requirement for a professional who has formerly represented the debtor, but also narrows the conflict of interest issue to one of factual evaluation of actual or potential conflicts only as related to the particular matters for which representation is sought. A debtor's former counsel cannot qualify to represent a trustee generally because the adverseness of the debtor's interest to that of a trustee at various points in the administration of a bankruptcy estate could place a debtor's counsel in an ethically untenable position and could harm the estate. That adverseness is not always present for every issue, however. Section 327(e) recognizes that fact and provides for practical implementation of a trustee's frequent need to use the expertise and knowledge of a debtor's counsel, if such can be done without harm to the debtor's or the estate's interests. In that connection, Tilberry's former representation of the debtor and his role as draftsman for certain of the debtor's documents must be examined.

In this case, Tilberry, because he is a creditor as well as a former attorney for the debtor, must also comply with § 327(c). Section 327(c), while not removing the "disinterested" requirement, takes employment by or representation of a creditor outside the scope of automatic disqualification. Accordingly, pursuant to § 327(c), Tilberry's position as a secured claimant of the estate and his representation of Blais must not produce an actual conflict of interest as to the matters for which his employment is sought.

■ The Court finds that there is no indication that Tilberry's lien is subject to attack in this case. Indications by the Trustee are that the lien itself was properly taken and perfected. Tilberry may select the easiest accounts to collect first to liquidate his own lien, but that alone does not constitute a conflict of interest. Should the Trustee, at Tilberry's recommendation, at-

tempt to compromise the amounts to be collected for given accounts receivable, such compromises would be subject to notice to all parties in interest, opportunity for objection and approval by the Court. Once the security for his lien has been liquidated and he begins to liquidate the accounts against which Camalloy and The Internal Revenue Service's liens operate, he will no longer be a creditor of this estate. Accordingly, the Court is satisfied that no actual conflict of interest exists between Tilberry's status as a secured creditor and the duties he will perform as attorney for the estate in the liquidation of the security for his valid lien. Rather, the goals of the secured creditor and the attorney for the Trustee are the same—to liquidate the debtor's accounts receivable and thereby reduce the obligations of the estate. There also is no conflict between Tilberry's pursuit of the litigation against Recreonics and his position as a lienholder. Indeed, Camalloy did not question that representation, and Recreonics is unsuitably situated to raise that issue.

Tilberry's representation of Blais, on a former or current basis, is also a factor in what must be the Court's factual evaluation of Tilberry's "interest" to that of the estate he seeks to represent. Pursuant to the current versions of both subsections (c) and (e) of § 327, unless that representation presents an actual conflict or is actually or potentially adverse to the debtor or to the estate, such representation is not a bar to employment. By his own statement, Tilberry is not representing Blais in matters relating to the employment sought or in connection with the case. Therefore, the fact of former representation or of possible current representation for unrelated matters do not rise to the level of "interestedness". The fact that Blais may be connected with a successor company to the debtor or may have substantial liability for certain obligations of the debtor if the estate is unable to satisfy those obligations does not change that result. Whatever legal options or actions may be available to the Trustee as a result of those facts are not affected by Tilberry's representation of the Trustee for the specific matters sought by this application. Rather, those facts probably increase the likelihood that Tilberry's representation of the Trustee for collecting the accounts receivable and pursuing the litigation against Recreonics is also substantially in the interest of his former clients, Blais and the debtor, as well as in the best interests of the estate.

The Court must also examine Tilberry's role in drafting certain licensing agreements, and perhaps other documents, as a representative of the debtor. There is no indication that such documents have any relation to the collection of the accounts receivable. Accordingly, no actual conflict or adverse interest arises with respect to Tilberry's employment for that purpose. No evidence has been presented to the Court that the validity of the transfers effectuated by those documents are in any way at issue in the litigation against Recreonics. Recreonics has sought to examine those documents through this Court upon an assertion that transfers of licensing rights to other parties, including perhaps a new company in which Blais has interests, may be transfers against which the Trustee should exercise his avoiding powers. Even if that assertion should be correct, Tilberry's representation of the Trustee for the specific purpose of pursuing the patent infringement, trademark and unfair competition action against Recreonics should not prevent the Trustee from examining the transfer avoidance question, by use of other counsel, should such appear appropriate. Should such issue arise and present a conflict of interest in the Recreonics action, however, this order of appointment does not foreclose challenge to Tilberry's continued employment. On balance, the Court remains convinced that the value to the Trustee of Tilberry's experience and familiarity with the Recreonics action and his apparent expertise in the legal areas involved outweigh any potential conflict or adverseness of interest which has been presented to the Court at this time.

Finally, the Court does not find Tilberry's proposal to compensate Blais for services performed in connection with the

collection of the receivables to be a impermissible "fee splitting" arrangement within the prohibition of 11 U.S.C. § 504(a). Blais has knowledge of the debtor's products and sales practices which may be valuable to the attorney for the Trustee in collecting the accounts receivable. Blais is to be paid by Tilberry on an hourly basis for the use of that expertise. It is not proposed, and the Court does not authorize, that Blais receive any payment directly from the estate or any predetermined percentage of Tilberry's fees. Rather, Tilberry has proposed to pay Blais on an hourly basis only as Blais performs services. It is hoped that Blais' assistance will expedite collection of some accounts without the need to resort to legal actions. Such choice seems to the Court to be well considered and poses no immediately foreseeable adverseness to the estate. Should problems arise with this practice at a later time, the parties are not precluded from raising such an objection at that time, prospectively.

Consistent with the foregoing, the Court authorizes Tilberry's employment by the Trustee for the purposes and at the compensation set forth in the Trustee's application. Such compensation shall be applied for before payment, however, and the Trustee is to provide quarterly reporting to the Court, Camalloy and the Internal Revenue Service. Such reporting shall set forth the gross amount of accounts collected, the names of the account debtors, the names of account debtors contacted but not yet collected, and any significant developments in the collection effort. An update of the litigation effort against Recreonics shall also be included in that report.

IT IS SO ORDERED.