**In re INTERSTATE DISTRIBUTION CENTER ASSOCIATES (A), LTD., a Colorado limited partnership, Employer ID # 75–2340201, Debtor.**

**Bankruptcy No. 91–25364–SBB.**

United States Bankruptcy Court, D. Colorado.

March 12, 1992.

Order on Motion for Amendment of Findings and Request for Additional Findings April 15, 1992.

Jan L. Hammerman, Hammerman & Schneider, P.C., Louise Romero–Atwood, Brownstein Hyatt Farber & Strickland, P.C., Denver, Colo., for debtor.

Leo Weiss, Office of U.S. Trustee, Denver, Colo., for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court on numerous related pleadings.[1]

1. 1. Debtor's Motion for Order Approving (a) Withdrawal of Counsel, (b) Employment of Substitute General Counsel for the Debtor in Possession, (c) Payment of Retainer to Substitute General Bankruptcy Counsel and (d) Notice of Withdrawal filed December 13, 1991;
2. Affidavit Pursuant to Bankruptcy Rule 2014(a) signed by attorney Jan Lawrence Hammerman filed December 13, 1991;
3. Debtor's Application to Employ Brownstein Hyatt Farber & Madden, P.C. as Special Counsel Pursuant to 11 U.S.C. §§ 327(b) and (e) filed December 23, 1991;
4. Affidavit of Lynda A. McNeive of Brownstein Hyatt filed December 23, 1991;
5. Brownstein Hyatt Farber & Madden, P.C. Statement of Compensation Pursuant to 11 U.S.C. § 329 filed December 23, 1991;
6. Debtor's Amended Motion for Order Approving (a) Withdrawal of Counsel, (b) Employment of Substitute General Counsel for Debtor in Possession, (c) Payment of Retainer

The Court, having reviewed the file, conducted a hearing, considered the supplemental documentation presented, and being advised in the premises, makes the following findings of fact, conclusions of law, and order.

Briefly, this Court has reviewed the pending motions and applications, as well as the supplemental disclosures of the numerous and pervasive relationships between and among the Debtor, entities related to the Debtor, Debtor's predecessor secured creditor, and Brownstein Hyatt Farber & Madden (now Brownstein Hyatt Farber & Strickland, herein "Brownstein Hyatt"). This Court concludes that Brownstein Hyatt is precluded from being employed under 11 U.S.C. § 362(e) for several reasons set forth hereinbelow.

## I. BACKGROUND.

Although the discussion of background material and the relationships among counsel and numerous entities is complex and circular, this Court will synthesize and state the elaborate factual setting as follows.

A. *The Debtor.*

Interstate Distribution Center Associates (A), Ltd. ("IDCA(A)" or the "Debtor") is one of several thousand partnerships across the country that do business under the name Trammell Crow Company (the "Trammell Crow Company Entities"). Approximately 120 Trammell Crow Company Entities either own property or do business in the State of Colorado. Although the Trammell Crow Company Entities have been permitted to conduct business throughout the United States and abroad for some 40 years, only in 1990 was a Texas close corporation formed with the name Trammell Crow Company.[2]

The Debtor has one limited partner, Lowell M. McKanna (Trustee), and one general partner, Crow–Watson # 9, Ltd., a Texas limited partnership formed in 1982. Crow–Watson # 9, Ltd., in turn, has several limited partners[3] and five general partners, J. McDonald Williams, Trammell Crow Foundation, Ltd., Joel C. Peterson, J. McDonald Williams (as nominee), and Gary D. Shafer[4] J. McDonald Williams, Joel C. Peterson, Gary D. Shafer, Robert J. Watson,[5] Norman L. Bledsoe,[6] and Harlan R. Crow[7] jointly and severally guarantee 50% of a 1984 loan secured by the Debtor's real property (the "1984 Loan").[8] The 1984 Loan was, initially, an obligation of Inter-

---

to Substitute General Bankruptcy Counsel and (d) Notice of Withdrawal filed January 8, 1992; and

7. Supplement to Brownstein Hyatt Farber & Strickland, P.C. Statement of Compensation Pursuant to 11 U.S.C. § 329.

2. Trammell Crow Company, formerly known as New Trammell Crow Company, filed Articles of Incorporation with the Office of the Texas Secretary of State on December 28, 1990.

3. The limited partners of Crow–Watson # 9, Ltd. are J. McDonald Williams (also a general partner), Trammell Crow Partners, Ltd., Brandon M. Williams 1979 Trust, Bryce A. Williams 1979 Trust, and The BAW Trust.

4. Although Brownstein Hyatt did not disclose Mr. Shafer as a current general partner of Crow–Watson # 9, Ltd., documents on file at the Office of the Texas Secretary of State include him as such.

5. Mr. Watson was a former general partner in Crow–Watson # 9, Ltd., Debtor's general partner.

6. Mr. Bledsoe was a former general partner in Crow–Watson # 9, Ltd., Debtor's general partner. Mr. Bledsoe is currently a marketing representative for that entity.

7. Mr. Crow's relationship, if any, with Crow–Watson # 9, Ltd., Debtor's general partnership, cannot be determined.

8. The 1984 Loan was made by United Bank of Denver to Interstate Distribution Center Associates, Ltd. ("IDCA"). The 1984 Loan has been amended twice, in February 1989 and in February 1990. The 1990 modifications included the following terms: (a) substitution of the Debtor IDCA(A) for IDCA as borrower and release of IDCA; (b) extension of the loan maturity date to December 31, 1992; (c) a principal payment by the Debtor IDCA(A) of $400,000.00; (d) elimination of any right to make further draws on the loan; (e) fixing the interest rate at $9\frac{3}{8}\%$; and (f) reduction of the amount guaranteed to 50% of principal, plus interest.

state Distribution Associates, Ltd.,[9] which was, by amendment, assumed by the Debtor IDCA(A).

### B. *The Representation.*

Brownstein Hyatt's previous and current relationship [10] with the Debtor and parties related to the Debtor may be summarized as follows:

1. The Debtor.

a. Brownstein Hyatt formed the Debtor IDCA(A) on behalf of the Trammell Crow Company Entities; [11]

b. Lynda A. McNeive of Brownstein, Hyatt serves as chief business counsel for the Debtor IDCA(A); and

c. Robert Nichols of Brownstein Hyatt currently represents the Debtor IDCA(A) in communications with the Environmental Protection Agency regarding contamination on neighboring parcels of real property.

2. The Sole Limited Partner of the Debtor.

Brownstein Hyatt has not represented the sole limited partner of the Debtor IDCA(A), Lowell M. McKanna.

3. The Sole General Partner of the Debtor, Crow–Watson # 9, Ltd.

Brownstein Hyatt maintains that the firm has represented Crow–Watson # 9 as follows:

a. Formation of IDCA and the Debtor IDCA(A);

b. Purchase of the properties owned by IDCA [12] and the Debtor IDCA(A);

c. Acquisition, development and/or permanent financing for the properties owned by IDCA [13] and the Debtor IDCA(A);

d. Modifications or workouts of these loans; [14]

e. Advice concerning lease provisions and other tenant issues;

f. Investigations and advice concerning potential Superfund liability and negotiations with the Environmental Protection Agency and adjacent landowners regarding environmental cleanup; and

g. Filing of the Debtor's bankruptcy Petition.

4. General and Limited Partners of Crow–Watson # 9, Ltd.

Brownstein Hyatt has represented the general and limited partners of Crow–Watson # 9, Ltd. on matters relating to Trammell Crow Company Entities, only, and not on any separate matters, and only under the direction of the Denver Area Office.[15]

5. Guarantors of the 1984 Loan.

Brownstein Hyatt's representation of Mr. Watson and Mr. Bledsoe (in addition to Messrs. Williams, Peterson, and Shafer who also fall into the category above) is as described below.

6. Trammell Crow Entities, In General.

a. On certain occasions, such as with IDCA [16] and the Debtor IDCA(A), Brownstein Hyatt has formed Colorado limited partnerships or corporations at the direction of the Denver Area Office on behalf of Trammell Crow Company Entities;

b. On behalf of individual partners in Trammell Crow Company Entities, Brownstein Hyatt has occasionally filed pleadings at the request of the Denver Area Office in cases where the partner was named in a suit by reason of his/her

---

9. Interstate Distribution Center Associates, Ltd. ("IDCA") is the predecessor owner of the assets now owned by the Debtor IDCA(A). According to Ms. McNeive's Affidavit, Crow–Watson # 9, the Debtor's general partner, is also the general partner of IDCA. Brownstein Hyatt does represent, or has in the past represented, IDCA in "certain financing, litigation, environmental and leasing matters." McNeive Affidavit at p. 2.

10. A majority, if not most, of the information used by this Court in preparing this summary of the relationship between the Debtor, various Trammell Crow Entities, individuals associated with various Trammell Crow Entities, United Bank of Denver and Brownstein Hyatt, came from the supplemental disclosure made by Brownstein Hyatt which is discussed *infra.*

11. Brownstein Hyatt is provided with the information on proposed ownership of the Debtor IDCA(A) and similar entities by personnel in the Denver Area Office which office has been engaged to act on behalf of the Trammell Crow Company Entities in instructing counsel and providing development, management, and accounting services for all properties owned by the entities in the Denver area.

12. *See,* note 9, *infra.*

13. *See,* note 9, *infra.*

14. *See,* note 8, *infra.*

15. *See,* note 11, *infra.*

16. *See,* note 9, *infra.*

relationship with a Trammell Crow Company Entity;

c. Additionally, Brownstein Hyatt has sometimes prepared or reviewed documents for individual partners on personal matters unrelated to their association with a Trammell Crow Company Entity, such as home purchase contracts or wills; and

d. As to guarantors of loans where the borrower is a Trammell Crow Company Entity or an entity in which a Trammell Crow Company Entity owned an interest, Brownstein Hyatt has reviewed the guaranty documents as part of a package of loan documents and provided *the lender* with an opinion as to the validity and enforceability of the guaranty document. These guarantors are sometimes, but not always, also partners in the Trammell Crow Company Entity that is the borrower under the loan.

### 7. United Bank of Denver.

With respect to United Bank of Denver, the Debtor's secured creditor prior to the transfer of the loan to an entity identified only as "CSM": [17]

a. Brownstein Hyatt has represented the Bank as Trustee of an unrelated family trust and previously represented the Bank as personal representative of the settlor's estate. Brownstein Hyatt deals only with the Bank's trust department, a separate corporate entity known as United Asset Management Services, Inc.;

b. Brownstein Hyatt provides some real estate representation for associated or "sister" banks in dealing with real estate owned by the banks as a result of foreclosure;

c. In conjunction with the 1984 Loan, Brownstein Hyatt reviewed the loan documents and modification documents each time that the loan was extended or modified and provided the legal opinions required by *United Bank of Denver.* Brownstein Hyatt alleges that the terms of the loan and the modifications were worked out between the Denver Area Office and the Bank and that the firm's role was merely to see that the documents properly reflected the agreed-upon terms *as they were described* to Brownstein Hyatt *by personnel in the Denver Area Office;* and

d. "In addition, over the past 15 years, [Brownstein Hyatt] has represented numerous partnerships related to Crow–Watson #9 with respect to loans from United Bank of Denver." Affidavit of Lynda A. McNeive, at 4(g).[18]

### C. The Bankruptcy Case.

The Debtor IDCA(A), through Brownstein Hyatt, filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on November 19, 1991. Brownstein Hyatt never filed an application to be employed as counsel for the Debtor pursuant to Section 327(a)—although the firm acted in that capacity until at least December 3, 1991, at which time Mr. Hammerman allegedly assumed control of and responsibility for the general representation of the Debtor. Mr. Hammerman, however, did not file an application to be employed as general counsel for the Debtor until December 13, 1991, ten days after the purported transition in attorneys and nearly a month post-petition.

Notwithstanding the Debtor's lack of *any* approved bankruptcy counsel, on December 13, 1991, this Court was presented with Debtor's Motion for Order Approving (a) *Withdrawal* of Counsel, (b) Employment of *Substitute* Counsel for the Debtor in Possession, (c) Payment of Retainer to Substitute General Bankruptcy Counsel and (d) Notice of Withdrawal. In that Motion, Mr. Hammerman, on behalf of the Debtor, revealed that "[Brownstein Hyatt], in consideration of this Court's opinion in *In re TMA Associates, Ltd.,* 129 B.R. 643 (Bankr.D.Colo.1991) has determined that it is appropriate for the firm to serve as special counsel to the Debtor pursuant to 11 U.S.C. Section 327(e)" [19] and that he,

---

**17.** The identity of "CSM" has not been disclosed to this Court. Likewise, neither has the date of transfer nor CSM's relationship, if any, with Brownstein Hyatt been revealed.

**18.** This perpetual shifting of clients, particularly with respect to loans and guaranties with United Bank of Denver leads this Court to be all the more wary and concerned about the certainty, rectitude, and unqualified independence of Brownstein Hyatt's allegiances.

**19.** Inasmuch as *In re TMA Associates, Ltd.,* 129 B.R. 643 (Bankr.D.Colo.1991) did *not,* in fact, deal with special representation pursuant to 11 U.S.C. § 327(e), this Court must surmise that the guidance gleaned from that opinion was not very useful. *TMA Associates* actually confirms the conclusion that Brownstein Hyatt is ineligible to serve as general counsel for this Debtor, not that it was eligible to perform services for this Debtor as its special counsel. Moreover, *TMA* is distinguishable from the instant case because of counsel's efforts, in *TMA,* to bring the issue of conflicts quickly and directly before

himself, would serve as Debtor's general bankruptcy counsel. *For the first time*, reference was made in the Motion to a $41,000.00 retainer paid to Brownstein Hyatt.[20]

Ten days later, on December 23, 1991, Debtor's Application to Employ Brownstein Hyatt Farber & Madden, P.C. as Special Counsel Pursuant to 11 U.S.C. §§ 327(b) and (e) was filed. In that Application, the Debtor states that it

> [D]esires that [Brownstein Hyatt] render certain limited legal services to it during the course of the Chapter 11 proceedings because that firm, as a result of its pre-petition services to [the Debtor] IDCA(A) and its general partner, is familiar with the events and legal implications of matters impacting this bankruptcy proceeding.... IDCA(A) will require continued services relating to certain ongoing business, real estate, environmental and partnership matters with which [Brownstein Hyatt] is familiar due to its pre-petition representation. These matters would not necessarily fall under the purview of services normally rendered by general bankruptcy counsel. *In addition,* because of its former association with the Debtor, *IDCA(A) would like the opportunity to utilize the services of [Brownstein Hyatt] to draft its disclosure statement and plan of reorganization,* if necessary.

(Emphasis added.)

Further, Brownstein Hyatt reveals that the firm has been asked to negotiate, along with Debtor's general bankruptcy counsel, a settlement with "CSM," the successor secured creditor to United Bank of Denver relative to the 1984 Loan. Attached to the Application was the Affidavit of Lynda A. McNeive, a member of the Brownstein Hyatt firm and self-described "chief business counsel for IDCA(A)." The Affidavit disclosed, in very general terms, certain, but not all, of the connections described above.

These modest initial disclosures, coupled with the unusual sequence of events as previously outlined, provoked this Court to issue an Order and Notice of Hearing on December 31, 1991 setting a hearing on the issues for January 22, 1992. On January 8, 1992, Mr. Hammerman amended his previous Motion to include a reference to his newly-formed firm, Hammerman & Schneider, P.C. No other changes of substance were made to the pending Motion of December 13, 1991.

Following the hearing on the issues, and upon the direction of this Court, Brownstein Hyatt supplemented both its Statement of Compensation Pursuant to 11 U.S.C. § 329 and disclosure of the previously alluded-to connections between the firm, United Bank, and the Debtor's "family members" on January 29, 1992.[21]

---

the Court and creditors for consideration. This Court, and creditors in the instant case, were not informed similarly. The facts and situations of the debtor and counsel in TMA are quite different from those here. This is a more marked, multifaceted, severe, and problematic conflict-laden situation.

The Motion also alludes to the fact that Brownstein Hyatt may, at some future date, apply for compensation for those services that the firm rendered while acting as the Debtor's *de facto* general counsel under Section 327(a) in reliance upon certain *dicta* in *TMA. TMA* is easily distinguished from the within case for reasons already cited as well as the interim employment order signed by the Court, at counsel's request, to cover a brief employment interval during pendency of the application to employ. Based upon the findings of this Court herein, a fee application relying upon *TMA* would not be recommended. *See, In re Grabill Corp.,* 113 B.R. 966, 972 (Bankr.N.D.Ill.1990); *In re Southern Diversified Properties, Inc.,* 110 B.R. 992, 996 (Bankr.N.D.Ga.1990); *In re Greater Pottstown Community Church,* 80 B.R. 706 (Bankr.E.D.Pa.1987). *Compare, In re Smartt,* 132 B.R. 765 (Bankr.D.Colo.1990) (retention of attorneys was previously authorized by the court); *In re Apex Oil Co.,* 128 B.R. 671 (Bankr.

E.D.Mo.1991) (same); *Matter of XGW Excavating Co., Inc.,* 111 B.R. 469 (Bankr.D.N.J.1990) (same); *In re Churchfield Management & Investment Corp.,* 100 B.R. 389 (Bankr.N.D.Ill.1989).

20. Brownstein Hyatt received a $41,000.00 prepetition retainer from the Debtor in contemplation of providing general bankruptcy services during the pendency of the instant case. This retainer was not disclosed to either the creditors or this Court *by Brownstein Hyatt* until December 23, 1991 when Brownstein Hyatt filed a statement pursuant to 11 U.S.C. § 329. Additionally, the Debtor has agreed to pay a $15,000.00 retainer (out of the retainer previously paid to Brownstein Hyatt) to Mr. Hammerman.

21. On January 30, 1992, this Court granted Debtor's *ex parte* motion for a protective order relative to the expanded or supplemental disclosure of these connections. This Court, in utilizing information from that disclosure in the formation of this opinion, has endeavored to maintain the integrity of truly proprietary or confidential data. In many, if not most instances, however, names of the individuals involved were either (a) integral to this Court's determination, or (b) referenced in public records.

## II. DISCUSSION.

■ The employment of professionals is governed by 11 U.S.C. § 327. Section 327(a), the central and most commonly applied employment provision in Chapter 11 cases, authorizes employment by a debtor in possession [22] of attorneys and other professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). *See, generally, In re Neidig Corp.,* 113 B.R. 696 (D.Colo.1990); *In re WVS, Investment Joint Venture & Tri–Crown Corp.,* 1990 WL 191864 (D.Colo.1990) (not reported in B.R.); *In re Ginco, Inc.,* 105 B.R. 620 (D.Colo.1988); *In re Western Office Partners, Ltd.,* 105 B.R. 631 (Bankr.D.Colo. 1989); *In re Sixth Avenue Car Care Center,* 81 B.R. 628 (Bankr.D.Colo.1988).

In the instant case, the Debtor asks this Court to approve the employment of Brownstein Hyatt as special counsel pursuant to Section 327(e) [23] which provides as follows:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such an attorney is to be employed.

11 U.S.C. § 327(e).

Although similar, subsections (a) and (e) of Section 327 are distinct in that the latter does not require that the professional be a "disinterested person." *Accord, Ginco, supra* at 621.

The procedures for obtaining Court approval of employment under any portion of Section 327 are outlined in Rule 2014(a), Fed.R.Bankr.P., "which requires among other things that the application for employment contain a detailed disclosure of the attorney's connections with the debtor, creditors and any other party in interest." *In re Land,* 116 B.R. 798, 803 (D.Colo. 1990).

This Court finds that only the tip of the relationship, or "connections," iceberg was revealed in the McNeive Affidavit. In fact, even in light of the supplemental disclosure, made only after specific Court request, this Court still is not completely confident it has full and precise comprehension of the scope and breadth of Brownstein Hyatt's prior *and continuing* extensive association with Trammell Crow Company Entities, their principals and related, or affiliated entities and parties, and the United Bank of Denver. It is the Applicant's burden to fully, accurately and clearly convey all connections between and among counsel and these numerous persons and entities.

Complete understanding of this complex framework of entities and all relationships by the Court is, however, neither absolutely necessary nor perhaps possible. This Court's own uncertainty may be nonetheless illustrative of the circumstances which compel the denial of the Debtor's Application to employ Brownstein Hyatt as special counsel under Section 327(e).

"The anti-conflict of interest sections of the Bankruptcy Code are based on a policy designed to avoid the potential for conflicts of interest, by 'requir[ing] that parties and their attorneys not only avoid conflicts, but be *above suspicion.'* " *In re Marine Power & Equipment Co., Inc.,* 67 B.R. 643, 647 (Bankr.W.D.Wash.1986) quoting *In re Roberts,* 46 B.R. 815, 838 (Bankr.D.Utah 1985) (emphasis added).

> Attorneys who seek appointment ... owe the duty of complete disclosure of all facts bearing upon their eligibility for such appointment. If that duty is neglected, however innocently, surely they should stand no better than if it had been performed.... If the rule is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally.

> \*    \*    \*    \*    \*    \*

> [A law firm may not] ignore its obligation to advise the court so that the court might make the determination of propriety based on the circumstances of the case.

---

**22.** While Section 327 makes reference only to the trustee's employment of professionals, it is made applicable to debtors in possession by virtue of Section 1107(a).

**23.** The Application also refers to 11 U.S.C. § 327(b), which refers to attorneys who have been employed by a debtor "on salary." This Court has not been presented with evidence that would support such a position and thus will not address the issue.

*Matter of Arlan's Department Stores, Inc.*, 615 F.2d 925, 933, 936 (2nd Cir. 1979).

*Accord, Roberts, supra* at 839 (attorneys "who are aware that they may be involved in actual or potential conflicts of interest must disclose those facts to the court.").

Ineffective or insufficient disclosure is not a minor problem.

It goes to the heart of the integrity of the bankruptcy system, of counsel, and of the courts.... Appearances count. Even conflicts more theoretical than real will be scrutinized. The disclosures *must appear in the application and declaration required by Bankruptcy Rule 2014(a)*. It is not sufficient that the information might be mined from petitions, schedules, section 341 meeting testimony, or other sources. [Citations omitted.] The burden is on the person to be employed to come forward and make *full, candid, and complete* disclosure. [Citations omitted.] Negligent omissions do not vitiate the failure to disclose.... Regardless of whether there is an actual conflict, *the existence of an arguable conflict must be fully disclosed in plain and public view*, if only to be explained away.

*In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 236–237 (Bankr.E.D.Cal.1988) (emphasis added).

*Accord, In re Flying E Ranch*, 81 B.R. 633, 637 (Bankr.D.Colo.1988). *See, generally, In re D.L. Enterprises*, 89 B.R. 107, 113 (Bankr.C.D.Cal.1988) ("I approve hundreds of applications for employment each year. I assume I am receiving full disclosure from debtors and counsel. Without this trust, the appointment process would grind to a halt. No bankruptcy judge can or should condone any erosion of this trust.").

Even assuming, *arguendo*, that disclosure had been complete, clear, and legally sufficient, this Court has grave doubts that the Brownstein Hyatt Application could be approved in light of the tangled web of relationships and connections. Brownstein Hyatt has represented, or is currently representing, the Debtor, the Debtor's general partner, the general and limited partners of the Debtor's general partner, the guarantors of the Debtor's principal indebtedness, *and* United Bank of Denver, the predecessor to Debtor's principal secured creditor. Although, admittedly, some of the representations have been regarding matters that are wholly separate and distinct from the subject of the proposed representation, each and every one of the above-referenced Brownstein Hyatt clients have been counselled, *for their own individual, or respective, benefits*, on matters relating to the assets, indebtedness and/or construct of this Debtor. The possible combinations and permutations of actual, tangible conflict may be exponential in number. Based upon the circumstances of the case, this Court has *no option* but to conclude that the multiple representations by Brownstein Hyatt of the Debtor and the related entities referenced herein is sufficient conflict to be an adverse interest under Section 327(e). *Accord, Ginco, supra* at 621 (a firm's representation of the principal shareholder, officer, and debt-guarantor of a debtor corporation, who may have an equity interest in the debtor and is a potential target for claims of corporate mismanagement, is prohibited under Section 327(e)). *See, generally, B.E.S. Concrete, supra* at 234 ("A *guarantor* on a corporate debt has a natural conflict with the principal and with other guarantors.") (emphasis added); [24] *D.L. Enterprises, supra* at 110–111 ("A general partner wears two hats.... An attorney is at peril when simultaneously representing a partnership and its *general partner*. The attorney will always be suspect.... In my view, an attorney should never place himself or herself in that position. An attorney who does is just asking for trouble.") (emphasis added); *In re Hempstead Realty Associates*, 34 B.R. 624, 626 (Bankr. S.D.N.Y.1983) (same); *In re Statewide Pools, Inc.*, 79 B.R. 312, 314 (Bankr. S.D.Ohio 1987) (an attorney's "role in *drafting* certain of the debtor's documents may give him an interest in preserving the integrity of certain transfers effectuated by these documents. That interest could be adverse to the estate or produce an actual conflict should such transfers be challenged.") (emphasis added); [25] *In re*

---

**24.** *But see, In re Lease–A–Fleet, Inc.*, 1992 WL 8334 (E.D.Pa.1992) (not reported in B.R.). This brief opinion also inexplicably discounts a nondisclosure as "largely an innocent misunderstanding of the disclosure requirements."

**25.** The District Court has rejected this "wait and see" attitude. *In re Ginco, Inc.*, 105 B.R. 620, 622 (D.Colo.1988) ("The protection of the integrity of the bankruptcy process is more important than the potential loss of assets for a particular estate. The literal language of the law must be respected and followed."). *Accord, In re Vann*, 136 B.R. 863 (D.Colo.1992) (citing *In re Kendavis Industry Int'l, Inc.*, 91 B.R. 742, 754 (Bankr.N.D.Tex.1988) ("The concept of potential conflicts is a contradiction in terms.")).

*The Cropper Co.,* 35 B.R. 625, 631 (Bankr. M.D.Ga.1983) ("even when *business transactions* are 'mutually beneficial' to both sides, such transactions involve adverse interests [because the buyer wants to purchase] at the lowest price [and the seller] wishes to realize as much profit as it can reasonably make....") (emphasis added).

Generally speaking, "[a] law firm in a conflict of interest position must choose between clients. In this case 11 U.S.C. § 327(e) leaves only one choice: the firm may chose to continue to represent parties other than the debtor." *B.E.S. Concrete, supra* at 235.

■ Furthermore, under Section 327(e), the only way in which an attorney who has previously represented a debtor can be employed by a debtor in possession is when such employment is authorized by one court and is "for a specified special purpose, other than to represent the [debtor in possession] in conducting the case." 11 U.S.C. § 327(e). The Congressional history of this section expressly provides that "[t]his subsection does not authorize the employment of the debtor's attorney to represent the estate generally or represent the trustee in the conduct of the bankruptcy case. The subsection will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." H.R.Rep. No. 595, 95th Cong., 1st Sess. at 328 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. at 38–39 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5824–5825, 6284–6285. "This provision thus recognizes the long-standing general rule that the trustee should not ordinarily employ an attorney who represents or has represented the bankrupt debtor, because the trustee should have an advisor impartial as between creditors [citation omitted]. Moreover, the 'specified special purpose' requirement serves the important policy of avoiding an unnecessary duplication of services at the expense of the estate." *In re NRG Resources, Inc.,* 64 B.R. 643, 647 (W.D.La.1986).

■ The Code clearly contemplates that the special tasks for which employment of special counsel is sought be clearly demarked in the employment application so the Court can determine whether the proposed attorney is conflicted and whether the services are indeed special tasks. According to the instant Application,

During the pendency of this bankruptcy, IDCA(A) will require continued services relating to certain ongoing business, real estate, environmental and partnership matters with which [Brownstein Hyatt] is familiar due to its pre-petition representation. *These matters would not necessarily fall under the purview of services normally rendered by general bankruptcy counsel.* In addition, because of its former association with the Debtor, IDCA(A) would like the opportunity to utilize the services of [Brownstein Hyatt] to draft its disclosure statement and plan of reorganization, if necessary. Application to Employ Brownstein Hyatt Farber & Madden, P.C. as Special Counsel Pursuant to 11 U.S.C. §§ 327(b) and (e), at ¶ 6. (Emphasis added.)

The suggestion that the contemplated services do "not necessarily fall under the purview of services normally rendered by general bankruptcy counsel" is sophistry, as the case law clearly demonstrates. Negotiating, renegotiating and/or reworking the 1984 Loan as well as assisting in the construction of a Chapter 11 Plan and Disclosure Statement are duties clearly beyond the scope and intent of Section 327(e).[26] *See, e.g., In re Tidewater Memorial Hospital, Inc.,* 110 B.R. 221, 227–228 (Bankr.E.D.Va.1989) (solicitation and negotiation of proposals for the sale or reorganization of the primary asset, including assisting the debtor with its plan of reorganization, which is the principal purpose of the Chapter 11 case, is "tantamount to representing the debtor in the conduct of the case."); *Hempstead Realty, supra* at 625 ("to assist debtor in preparing a plan of arrangement" is "more appropriately the sort of legal work that general counsel for a Chapter 11 debtor must pursue."); *In re Impact Publications, Inc.,* 24 B.R. 980, 982 (Bankr.N.D.Tex.1982) ("Matters involving

26. This case is a far cry from the situation presented in the Gillett Holdings case, another case in which Brownstein Hyatt is intimately involved and on which it presumably relies. Because of its complexity, size, corporate structure, the number of creditors involved, and structure of debt, Gillett Holdings could even be called *sui generis.* This Court will not permit similar future arguments that assistance of special counsel is necessary to negotiate and draft a successful plan of reorganization without a like showing of special circumstances, unusual complexity, corporate uniqueness, and extraordinary debt structure.

liquidation of the estate, including sale of assets, is a duty of the trustee.... Professionals employed by the trustee, whether under § 327(a), § 327(d), or § 327(e) may not be employed and will not be compensated for services that the Code requires of the trustee."). *Compare, In re Stoecker,* 114 B.R. 965, 973 (Bankr.N.D.Ill.1990) (investigating and developing lender liability claims are among the statutory duties of a trustee); *Statewide Pools, supra* (collecting certain of the debtor's accounts receivable and the continued pursuit of a patent suit are acceptable tasks for special counsel).

### III. CONCLUSION.

Clearly, Brownstein Hyatt, unable to meet the stringent criteria of Section 327(a) and, seeking a way to remain vitally active in the conduct of this case, chose Section 327(e) as its vehicle because of the absence of the "disinterested person" requirement. "The Bankruptcy Code certainly does not allow attorneys to change hats at their own whim in order that its specific requirements may be circumvented." *NRG Resources, supra* at 649.

Accordingly, it is

ORDERED that Debtor's Amended Motion for Order Approving (a) Withdrawal of Counsel, (b) Employment of Substitute General Counsel for Debtor in Possession, (c) Payment of Retainer to Substitute General Bankruptcy Counsel and (d) Notice of Withdrawal is GRANTED, IN PART, as to subparts (b) and (c), only, and excepting any references to "substitute" general counsel, and DENIED, IN PART, as to the remainder of the Motion; and it is

FURTHER ORDERED that Debtor's Application to Employ Brownstein Hyatt Farber & Madden, P.C. as Special Counsel Pursuant to 11 U.S.C. § 327(b) and (e) is DENIED; and it is

FURTHER ORDERED that the retainer paid to Brownstein Hyatt by the Debtor for bankruptcy representation in this case be returned to the Debtor, except for that portion turned over to Jan Hammerman.

### Order

April 15, 1992.

THIS MATTER comes before the Court on the Motion for Amendment of Findings and Request for Additional Findings [pursuant to Rule 52(b), Fed.R.Civ.P.] filed March 25, 1992 ("Motion") by Brownstein Hyatt Farber & Strickland, P.C. ("Brownstein Hyatt"). The Court, having reviewed the file and being fully advised in the premises, makes the following findings and conclusions:

1. Brownstein Hyatt seeks certain amendments and/or additional findings of fact with regard to the Court's Memorandum Opinion and Order issued March 12, 1992, *nunc pro tunc* November 19, 1991, wherein the Court disallowed the Debtor's Application to Employ Brownstein Hyatt pursuant to 11 U.S.C. § 327(e).

2. Brownstein Hyatt seeks supplementation of the information at page three, footnote four, to the effect that Brownstein Hyatt's failure to disclose Mr. Shafer as a current general partner of Crow–Watson # 9, Ltd., was a direct result of the tardy filing with the Texas Secretary of State of a Certificate of Amendment to Amended and Restated Certificate of Limited Partnership for Crow–Watson # 9, Ltd. Brownstein Hyatt **did accurately disclose** the information then available to Brownstein Hyatt.

3. Brownstein Hyatt seeks clarification and/or recognition of the information at page seven, paragraph 6.d., that as counsel for the borrower it was appropriate, indeed customary, for borrower's counsel to provide an opinion to the lender, but in doing so it was not actually concurrently providing representation to that lender. The Court concurs and recognizes the customary practice. The Court's conclusion at paragraph 6.d., is a consequence of the convoluted, sometimes confusing, connections between Brownstein Hyatt and the bank (United Bank) and its associated or "sister" banks. The Court, however, recognizes the distinction that Brownstein Hyatt here clarifies and emphasizes for an accurate record.

4. Brownstein Hyatt also seeks to have the identity and role of "CSM" clarified, particularly at page seven, footnote 17. The Court noted an absence of information of CSM such as its identity, date of transfer, or connections to Brownstein Hyatt, if any. Any negative inference which might have been drawn from a statement that helpful information was absent should be dispelled. Brownstein Hyatt advises the Court in its supplemental pleading that CSM has no connection or relationship with Brownstein Hyatt, the Debtor, or its general partners or any individual related to the Trammell Crow Company entities, nor to United Bank or any party in the case.

5. The Court believes that Brownstein Hysatt's requests for amendments or additional findings at paragraphs D and E of the Brownstein Hyatt's Motion, do not require further Court consideration.

6. Brownstein Hyatt requests, again (paragraph F), clarification that it has not represented the lender, United Bank, directly or indirectly, in or as part of the loan transaction between this Debtor and United Bank. In clarification, the Court would state that according to the file and disclosures made by Brownstein Hyatt, Brownstein Hyatt has represented, only, United Bank affiliated or "sister" banks and a separate corporate entity known as United Asset Management Services, Inc., which, evidently, constitutes United Bank's trust department.

IT IS THEREFORE ORDERED that the above recitals, amendments, and additional findings shall be and are hereby deemed an amendment to the Memorandum Opinion and Order issued by this Court March 12, 1992 with respect to employment of Brownstein Hyatt as counsel for the Debtor pursuant to 11 U.S.C. § 327(e).