## In re AMERICAN AVIA ASSOCIATES-SEA et al., Debtors.

## In re AVIA DEVELOPMENT GROUP-KCI, INC., Debtor.

Bankruptcy Nos. 92–42954–H5–11 to 92–42957–H5–11, 92–43676–H5–11 to 92–43678–H5–11, 92–43680–H5–11 and 92–43677–H5–11.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 10, 1992.

Ben Floyd, Bonham Carrington & Fox, Alfredo R. Perez, Bracewell & Patterson, Houston, TX, for American Avia Associates–SEA et al.

John Lee, Andrews & Kurth, Houston, TX, for Avia Development Group–KCI, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAREN KENNEDY BROWN,
Bankruptcy Judge.

Before the Court is the application of the debtor for authority to employ the law firm of Gibbs & Ratliff, L.L.P. as special counsel to pursue certain state court litigation. Employment of this firm is opposed by the defendants in the state court litigation. This court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding. After trial of this matter on November 3, 1992, this Court approved employment of the law firm. Pursuant to the time period provided by Bankruptcy Rule 9014, Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52, the Court now makes additional findings of fact and conclusions of law in support of its prior order approving the appointment of special counsel.

AGRIC, in an effort to bypass the ten day time period provided by the Federal Rules of Civil Procedure, presented a motion for stay in open court on November 5, 1992. This Court did not rule on that motion. (T. 62, Hearing of Nov. 5, 1992). Instead, the Court explained that further findings would be entered and the motion for stay ruled upon thereafter. Respondents have ten days to answer the request for stay. AGRIC denied that this Court could amend its ruling after notice of appeal was filed, citing *In re Combined Metals Reduction Co.*, 557 F.2d 179, 201 (9th Cir.1977); *Midwest Properties No. Two v. Big Hill Investment Co.*, 93 B.R. 357, 360 (N.D.Tex.1988), neither of which supports that constrictive reading of the Rules. Those cases apply instead to appeals from the district court to the court of appeals. This court as part of the district court has at least ten days within which to file additional findings in appropriate cases.

Findings of Fact

1. The debtor in this case and its three related corporate debtors, each of which is a debtor in a chapter 11 case pending before this Court, are joint venturers with American General Realty Investment Corporation ("AGRIC") for the purpose of constructing, leasing and maintaining air cargo facilities at air terminals throughout the United States. The four related corporate debtors are Avia Development Group–DFW, Inc.; Avia Development Group–KCI, Inc.; Avia Development Group–BWI, Inc.; and Avia Development Group–SEA, Inc.

2. For each airport project a separate joint venture was formed by the parties. Each of these joint ventures is a debtor in a chapter 11 case pending before this Court. The joint venture bankruptcies were brought as involuntary proceedings filed by the corporate debtors. The four joint venture debtors are American Avia Associates–KCI; American Avia Associates–DFW; American Avia Associates–SEA; and American Avia Associates–BWI.

3. AGRIC's role in the joint ventures was to obtain financing for the ventures through its parent, American General Investment Corporation ("AGIC"). The re-

spective corporate debtors were to be the managing partner responsible for soliciting business, obtaining ground leases, supervising development, leasing the facilities, operating, and overseeing each project.

4. According to the corporate debtors, AGRIC and AGIC attempted to wrongfully withdraw from the projects and committed other acts to the detriment of the projects.

5. On September 13, 1991, a case was filed in the district court of Harris County, Texas by the corporate debtors and two nondebtor related corporations against AGRIC, AGIC, and AGIC's parent, American General Corporation, which was included for its alleged influence over the activities of the other defendants.

6. The original petition alleges that the three defendants are liable to the plaintiffs for monetary damages. The petition was amended to include an application for a temporary restraining order and a temporary injunction. The petition was amended a second time to include the venture debtors as plaintiffs for purposes of seeking the temporary restraining order and temporary injunction. The petition was amended a third time to include the principals of the corporate debtors as additional plaintiffs seeking to declare invalid their guarantees of the ventures' indebtedness to the defendants. This third petition seeks only equitable relief for the principals.

7. This lawsuit is a major potential asset of the estates.

8. Prior to the bankruptcy filings, the corporate debtors entered into a contingent fee contract with the law firm of Gibbs & Ratliff, L.L.P. to represent the plaintiffs in the state court case. Pursuant to 11 U.S.C. § 327(e), the corporate debtors now seek the approval of this Court for the firm to continue its representation.

9. Soon after filing, AGRIC removed the state case to this Court. Plaintiffs moved to remand and a hearing was held. After reviewing the law and argument of the parties, this Court remanded the case to state court.

10. The defendants in the state court action vigorously oppose the continued re-

tention of the plaintiffs' counsel. The parties to this litigation have, thus far, spent over $1.4 million in attorney fees and expenses.

11. The state court action is preferentially set for trial in February 1993. Gibbs & Ratliff, L.L.P. are experienced in representing plaintiffs in cases similar to that of these plaintiffs and in pursuing litigation on behalf of multiple plaintiffs and have obtained substantial monetary judgments for clients in cases similar to the instant case. It would be extremely detrimental to the plaintiffs' case for another firm to take over the plaintiffs' representation at this juncture.

12. The relief requested by the third amended petition has been carefully structured to avoid a conflict of interest in the representation of the plaintiffs by one law firm.

13. The plaintiffs have a complete unity of interest in finding the defendants liable for their alleged actions. The joint ventures and corporate debtors must be successful in order for the principals to prevail on their claim for equitable relief.

### Conclusions of Law

1. Section 327 states in part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. . . .

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Counsel here is sought to be retained solely under Section 327(e) which allows the debtor-in-possession to retain special counsel if such retention is in the best interest of the estate and the attorney does not represent or hold an interest adverse to the debtor or the estate with respect to the matter on which such attorney is to be employed. The legislative history of section 327(e) is described in *In re Interstate Distribution Center Associates (A), Ltd.,* 137 B.R. 826, 832 (Bankr.D.Colo.1992):

The Congressional history of this section expressly provides that "[t]his subsection does not authorize the employment of the debtor's attorney to represent the estate generally or represent the trustee in the conduct of the bankruptcy case. The subsection will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." H.R.Rep. No. 595, 95th Cong., 1st Sess. at 328 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. at 38–39 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5824–5825, 6284–6285.

2. AGIC and AGRIC, defendants in the state court litigation cite many cases dealing with disqualification of counsel. None is directly on point with the nature of this retention, the relationship between these parties, and the facts of this case. Most of the cited cases deal with retention of general bankruptcy counsel under Section 327(a) or they blend the requirements for qualification of state court litigation counsel under 11 U.S.C. § 327(e) with the requirements under Section 327(a), which require that general bankruptcy counsel be "disinterested" as well as not represent an interest adverse to the debtor or the estate. *See Interstate Distribution Center Associates (A), Ltd.,* 137 B.R. 826 (Bankr.D.Colo. 1992) (attorneys sought employment as "special counsel" but, in fact, intended to act as general bankruptcy counsel and pre and post-petition represented general and limited partners affiliated with the debtor); *In re Roger J. Au & Son, Inc.,* 101 B.R. 502 (Bankr.N.D.Ohio, 1989) (special counsel retention analyzed under § 327(a)); *In re Kendavis Industries Intern., Inc.,* 91 B.R.

742 (Bankr.N.D.Tex.1988) (general counsel shown to be not disinterested under Section 327(a)). The distinction is important. While "disinterested" is defined by the Bankruptcy Code, "adverse interest" is not, and one must look for assistance to state disciplinary rules concerning conflicts of interest and multi-party representation for a determination of adverse interests.

Judge Clark's well reasoned case of *In re Kuykendahl Place Associates, Ltd.,* 112 B.R. 847 (Bankr.S.D.Tex.1989) cited by AGIC and AGRIC in support of disqualification is, again, a case dealing with representation of counsel for the debtor generally in its bankruptcy case under Section 327(a) and deals with the inherent conflict of interest between representation of general and limited partners in the same proceeding; facts which are inapposite to those in the instant matter. In fact, the undersigned judge recognized the importance of independent counsel by requiring the joint venture debtors to have independent general bankruptcy counsel.

Furthermore, most of the cases disqualifying general and special counsel evidence a concern for promoting independent counsel for the representation of minority interest holders who may have claims of corporate mismanagement, breach of fiduciary duty, or the type of claims asserted by limited partners against general partners, against the co-litigant insiders or guarantors. *See In re Ginco, Inc.,* 105 B.R. 620, 621 (D.Colo.1988); *In re Johore Investment Company (U.S.A.) Inc.,* 41 B.R. 318, 319 (Bankr.D.Hawaii, 1984); *In re Neidig, Corp.,* 113 B.R. 696 (D.Colo.1990). These worthy concerns are simply not present in this case. Here there are no minority shareholders in the debtor corporations, the joint ventures consist of the airport projects themselves, and the only other interests are those of AGRIC and AGIC, the financing arm of the joint ventures. There has never been any allegation by AGRIC or AGIC of potential claims of mismanagement by the debtors-in-possession. Indeed, AGRIC and AGIC have entered into agreed cash collateral orders with each of the joint venture debtors-in-possession which provide for management to remain in the hands of the principals involved in the state court litigation.

3. While federal law determines adversity under Section 327(a), federal courts may look to state law for guidance. *In re American Airlines,* 972 F.2d 605, 612 (5th Cir.1992). *See also ABA Model Rule of Professional Conduct* Rule 1.7. Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct provides:

(a) A lawyer shall not represent opposing parties to the same litigation.

(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

(1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or

(2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

(c) A lawyer may represent a client in the circumstances described in (b) if:

(1) the lawyer reasonable believes the representation of each client will not be materially affected; and

(2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantage involved, if any.

Comment 2 to this rule provides that the term "opposing parties" contemplates a situation where a judgment favorable to one of the parties will directly impact unfavorably upon the other party. Comment 3 to this rule elucidates the situations which give rise to impermissible conflicts in multiple client representation. An impermissible conflict may exist or develop where there is a substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party, or where there are substantially different pos-

sibilities of settlement of the claims or liabilities in question.

4. The second level of inquiry in analyzing this retention of counsel looks to the umbrella effect of the bankruptcy context. This court has a duty to review any proposed settlement of this litigation to ensure that it meets every criteria established by the rules and applicable case law. Furthermore, special counsel cannot be paid in this litigation regardless of a favorable outcome until they have applied to this Court in accordance with the Bankruptcy Code and Rules and this Court has had an opportunity to thoroughly review the outcome of the litigation, the reasonableness of the fee, and again scrutinize at all subsequent stages counsel's representation for conflicts of interest.

5. The facts of the instant matter are closer in line with the facts of *In re RPC Corp.*, 114 B.R. 116 (M.D.N.C.1990) than with those cited by AGIC and AGRIC regarding disqualification of special counsel. In that case appeal was taken to the district court of a bankruptcy court order allowing the chapter 7 trustee to retain an attorney to pursue lender liability litigation on behalf of the estate who had also represented the guarantor of the debtor corporation's debt to the bank, who was a creditor of the estate and chief executive officer of the debtor. At the time of the retention by the chapter 7 trustee the attorney continued to represent the guarantor who had claims pending against the bank and who had been found liable on his guarantee. The chapter 7 trustee sought the retention of the attorney because the claim against the bank was the most valuable asset of the estate, the attorney was experienced in lender liability litigation and was intimately familiar with the facts of the case which was essentially the same as the guarantor's claim against the bank in the pending litigation. The trustee arranged a contingency fee for payment of the law firm and sought bankruptcy court approval for the retention. The bank objected. As in the instant case, no other creditors of the estate objected to the retention. Upon approval of the retention of the firm the bank appealed even prior to the entry of the court's written order. In upholding the bankruptcy court's order the district court found that retention of the firm was justified because it would be acting as special counsel in the estate's lender liability claim against the bank. The pending guarantor suit and the proposed estate litigation both involved the same basic issues and the same claim against the bank. "In this special situation, 'the interest's of the estate and the firm's clients are identical with respect to the firm's duties as special counsel.'" *Id.* at 120.

6. There is no inconsistency in the evidence or incompatibility in the plaintiffs' positions in the instant case. Any settlement of the litigation requires bankruptcy court oversight and approval before it is effective under the rules and case law concerning compromises of controversies. A judgment in the litigation will either be favorable to all of the plaintiffs or adverse to all of the plaintiffs.

7. Based on the foregoing, the Court concludes that debtor's retention of Gibbs & Ratliff, L.L.P. is in the best interests of the estate and that such attorneys do not represent or hold an interest adverse to the debtor or the estate with respect to the matter on which they are to be employed.

8. In a contingent fee case nunc pro tunc retention simply serves to eliminate any further questions regarding the authority of counsel to proceed. It has no impact on counsel's fees. In the interests of completeness, when all parties were well aware of the identity of counsel, it is a reasonable resolution of the issue which does not serve to prejudice any party.

9. Special counsel for debtors is ORDERED to amend the Bankruptcy Rule 2014 statement.