**In re LAR DAN ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 98–B–40922(JHG).**

United States Bankruptcy Court, S.D. New York.

May 11, 1998.

Siller Wilk, L.L.P., New York City, by Ronald S. Itzler and Paul Deutsch, for Applicant.

Catherine A. Lotito, New York City, for Debtor.

Hon. Carolyn S. Schwartz, United States Trustee, New York City, by Tracy Hope Davis.

## DECISION ON DEBTOR'S APPLICATION TO RETAIN SILLER WILK LLP AS SPECIAL COUNSEL

JEFFRY H. GALLET, Bankruptcy Judge.

Lar–Dan Enterprises, Inc. (the "Debtor") moved to retain Siller Wilk LLP ("Siller Wilk") as Special Counsel to oppose its landlord WFP Retail Co.'s ("WFP") motion to lift the automatic stay.[1] The United States Trustee (the "UST") objected. A hearing was held on April 24, 1998. For the reasons set forth below, the application is granted.

### BACKGROUND

The Debtor operates the Pipeline Restaurant at Two World Financial Center. The Debtor filed for bankruptcy under title 11, chapter 11 of the United States Bankruptcy Code (the "Code") on February 11, 1998. WFP's eviction proceeding against the Debtor was pending in New York City Civil Court (the "Eviction Proceeding"). The Eviction Proceeding was automatically stayed upon the bankruptcy filing. WFP moved to lift the stay (the "Lift–Stay Motion") to proceed in state court with the Eviction Proceeding.[2] After a hearing on March 27, 1998, Catherine A. Lotito, Esq. ("Lotito") was retained as general counsel to the Debtor.[3]

On or about March 30, 1998, the Debtor made application to retain Siller Wilk as Special Counsel pursuant to § 329 of the Code [4] and Federal Rule of Bankruptcy Pro-

---

1. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A).

2. On April 24, 1998, I entered an order granting WFP's motion to lift the stay and permit the parties to proceed in state court in the Eviction Proceeding.

3. On March 2, 1998, a committee of unsecured creditors was formed. The committee has yet to retain counsel.

4. Section 329 of the Code provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

cedure 2016. The Debtor's application indicated that Lotito, a sole practitioner, would not be able to defend against the Lift–Stay Motion and Siller Wilk's retention would be for the sole purpose of attempting to settle and defend against it. The Debtor's application also indicated that Siller Wilk was paid a $3,000 retainer from Larry Panish ("Panish"), a principal of the Debtor, and would "make application to this Court under the appropriate sections of the Code and the Bankruptcy Rules in the event the services rendered by [sic] the Debtor exceed the $3,000 retaining fee." The UST objected to Siller Wilk's retention on the grounds that no mechanism was in place to prevent duplication of services between Lotito and Siller Wilk. Accordingly, I directed the parties to appear before me to have a hearing on Siller Wilk's retention application. WFP's Lift–Stay Motion was returnable for the same day. Before the hearing, the Debtor and Siller Wilk resolved the UST's objections.

During the hearing, Siller Wilk revealed that in addition to the $3,000 retainer fee, Panish also paid additional monies to Siller Wilk for its services. Siller Wilk also indicated that it anticipated that it would receive additional similar compensation. On the record, I directed that if Siller Wilk's application was granted, its retention order must provide that I will review all compensation, whether the Siller Wilk fees come from Panish or from any other source outside the estate, for reasonableness. In addition, I also raised the issue of whether Siller Wilk's representation of the Debtor, while receiving compensation from one of its principals, is a conflict of interest. Accordingly, I reserved decision on the issue of Siller Wilk's retention.

Thereafter, I heard WFP's Lift–Stay Motion. Siller Wilk, understanding that it had not been officially retained, represented the Debtor. I granted WFP's motion.

## DISCUSSION

The issue before me is whether Siller Wilk may be retained as Special Counsel for the

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, of 13 of this title; or

sole purpose of representing the Debtor in one motion, be paid by a third party-insider, while maintaining loyalty to the Debtor. I find that under these facts, the Debtor may retain Siller Wilk as Special Counsel for the limited purpose of representing the Debtor against WFP's Lift–Stay Motion.

Where a debtor seeks to employ counsel, § 327 of the Code requires "(i) that the attorney does not hold or represent an interest adverse to the estate and (ii) that the attorney is disinterested." *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 531 (Bankr.S.D.N.Y. 1994); *see* 11 U.S.C. § 327 (West 1998). These requirements are vital. Indeed, "they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Leslie Fay*, 175 B.R. at 532 (*quoting Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994)) (alteration in original). These requirements also simultaneously apply not only at the time of retention, but throughout the case. *See In re Granite Partners, L.P.*, 219 B.R. 22, 32–33 (Bankr.S.D.N.Y.1979).

The term "Adverse Interest" is not defined in the Code and must be determined on a case by case basis. *See In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr.S.D.N.Y.1996). Under case law, "Adverse Interest" has come to mean "(1) the possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of bias against the estate." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y.1998) (also noting that "Adverse Interest" has generally come to mean "any interest or relationship, however slight, 'that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'") (citations omitted). A disinterested person is one who "does not

(2) the entity that made such payment.

have any interest materially adverse to the interest of the estate or of any class of creditors ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor...." 11 U.S.C. § 101(14)(e) (West 1998).

 Debtor's counsel owes allegiance to the debtor, not its stockholders, officers or directors. *In re Leslie Fay Cos., Inc.,* 175 B.R. at 532 (*citing In re Grabill Corp.,* 113 B.R. 966, 970 (Bankr.N.D.Ill.1990)). However, several courts have found that where an attorney for the debtor is compensated by a third party, it does not give rise to a per se impermissible conflict of interest. *See In re Lotus Properties LP,* 200 B.R. 388 (Bankr. C.D.Cal.1996); *In re Kelton Motors Inc.,* 109 B.R. 641 (Bankr.D.Vt.1989). The bankruptcy court in *Kelton Motors* established a five-factor test to determine whether compensation to a debtor's counsel from a third party is an impermissible conflict of interest. These factors include: (1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider; (2) the debtor must expressly consent to the arrangement; (3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client; (4) the factual and legal relationship among the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation; (5) the debtor's attorney/applicant must demonstrate and represent, to the court's satisfaction, the absence of facts which otherwise create non disinterestedness, actual conflict, or impermissible potential for a conflict of interest. *In re Kelton Motors Inc.,* 109 B.R. at 658. Applying these factors, I find that Siller Wilk is not disqualified to serve as Special Counsel to the Debtor for the sole purpose of litigating and/or negotiating WFP's Lift–Stay Motion.

At the outset, I note that this case is distinguishable from *Kelton Motors,* and virtually all of the other cases found, because Siller Wilk seeks to be retained not as general counsel, but as Special Counsel. Here,

Siller Wilk's application is for a limited purpose that is narrow in scope. However, I find these principles applicable in this context.

First, Siller Wilk has disclosed the compensation relationship between it and the Debtor's principal. I note that no one objected to this arrangement on conflict of interest grounds. Second, the Debtor has expressly consented to the arrangement. Indeed, it was Debtor's general counsel that made the application to retain Siller Wilk. Third, Siller Wilk disclosed on the record the factual and legal relationship between itself, Panish, and the Debtor. Siller Wilk did not represent on the record that there was a written contractual relationship for its services. I am confident that Siller Wilk has disclosed all payments made to it from Panish. Indeed, Siller Wilk has completed its representation of the Debtor in connection with WFP's Lift–Stay Motion. I am also confident that should Siller Wilk receive further compensation from Panish or any other source, it will promptly disclose such fact to me, the UST, and all other parties in interest. Finally, after reviewing Siller Wilk's application and hearing argument, I am convinced that Siller Wilk is sufficiently disinterested to represent the Debtor for the narrow purpose of defending against WFP's Lift–Stay Motion. In addition to these factors, I believe that my control over the reasonableness of the fees provides adequate safeguards for the Debtor.

## CONCLUSION

For the reasons set forth above, Siller Wilk's application for retention is GRANTED. Siller Wilk is directed to settle a new retention order consistent with this decision.