## In re COVENANT FINANCIAL GROUP OF AMERICA, INC., Debtor.

### Bankruptcy No. 97–07424–BGC–7.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Jan. 7, 1999.

---

Covenant Financial Group of America, Inc., Pro se.

Thomas Reynolds, Birmingham, Alabama, trustee.

**Order Approving Employment of John Joseph Smith, Jr. As Attorney for the Trustee (For a Special Purpose Under 11 U.S.C. § 327(e))**

BENJAMIN COHEN, Bankruptcy Judge.

The matters before the Court are the *Application for Approval of Employment of Special Counsel* filed on August 6, 1998 by the Chapter 7 trustee, Mr. Thomas E. Reynolds and an *Objection to Application for Approval of Employment of John Joseph Smith, Jr.* filed on September 8, 1998, by Mr. William Michael Keever and Stewart Keever, L.L.C. The trustee seeks to employ Mr. Smith to represent the estate's interest in a legal malpractice suit filed by the debtor and others against Mr. Michael Keever and others.

A hearing on both matters was held on October 27, 1998. Appearing were Mrs. Brenda Shifflet Spahn, a stockholder in, the president of, and the chief operating officer of the debtor, and the owner and the operator of several related corporate entities; Mr. Reynolds; Mr. Smith; Mr. David Maxey, the attorney for Mr. William Michael Keever and Stewart Keever, L.L.C.; and Mr. Thomas Corbett, the attorney for the Bankruptcy Administrator. The matters were submitted on the representations of the trustee, the testimony of Mrs. Spahn and Mr. Smith, the record in this case, the arguments of counsel and the opponent's brief.

1. The debtor did not apply to this Court for approval of Mr. Smith's employment.

2. The suit included other defendants who may or may not be vicariously liable, or liable in a supervisory capacity, for Mr. Keever's alleged malpractice.

## I. Findings of Fact

The debtor corporation filed for Chapter 11 relief on October 2, 1997. The case was converted to Chapter 7 on July 7, 1998; however, during the Chapter 11 period, Mrs. Spahn employed Mr. Smith to file a legal malpractice lawsuit on her behalf and on behalf of the debtor and several related corporations.[1] On May 15, 1998, Mr. Smith filed that suit in the state court against Mr. William Keever and others.[2]

### A. The Trustee's Application and Mr. Keever's Objection

#### 1. Application

The trustee seeks to employ Mr. Smith under 11 U.S.C. § 327(e) to represent the bankruptcy estate's interest in the pending malpractice action.[3] Section 327(e) allows for the employment of attorneys for specified, special purposes.

The trustee's application discloses that Mr. Smith represents Mrs. Spahn, the debtor, and some debtor-related corporate entities. The application discloses further that under Mr. Smith's contract of employment with the plaintiffs, that Mr. Smith was to receive a $20,000 retainer to be paid *personally* by Mrs. Spahn. If the plaintiffs were successful, the parties agreed that, prior to any portion of the recovery being paid to Mr. Smith as a fee or before any portion was divided among the plaintiffs, Mrs. Spahn would be reimbursed for payment of the retainer. As full compensation, Mr. Smith was to receive 50 percent of any recovery obtained by him.

The trustee's proposal is similar. The trustee proposes to compensate Mr. Smith with 50 percent of any amount recovered, (minus the expenses and any reimbursement due Mrs. Spahn because of her payment of any portion of the retainer) and to reimburse Mr. Smith for all expenses advanced in the litigation.[4]

3. No one questions that the bankruptcy estate has an interest in the lawsuit.

4. The trustee has no funds to pay any portion of the retainer and his agreement with Mr. Smith is that the payment of the retainer is not required by the estate and that Mr. Smith

## 2. Objection

Mr. Keever, who is a creditor of the debtor, filed a proof of claim in this case on October 24, 1997 for $2,119.21. The basis of Mr. Keever's objection to Mr. Smith's employment is that Mr. Smith is not a disinterested person and that if Mr. Smith represents the trustee that Mr. Smith's representation of Mrs. Spahn, along with the corporate entities, would create an interest adverse to the debtor and the bankruptcy estate. Mr. Keever's objection is the only objection filed with the Court.

## B. The Trustee's Representations

The trustee, who is an attorney, represented to the Court that he could not, and that he would not, employ any attorney other than Mr. Smith. The trustee explained that: Mr. Smith is a specialist in the legal malpractice field, a field in which very few work and even fewer specialize; Mr. Smith is intimately familiar with the details of this case; and, because the estate has no funds to advance for the litigation, Mr. Smith has agreed to represent the estate on a contingency fee basis. In the trustee's opinion, because of the undesirable nature of the lawsuit, that is because it is a legally and factually complex legal malpractice claim, there is no reasonable expectation that the trustee will be able to find another attorney to prosecute the lawsuit, and certainly will not be able to find one willing to work on a contingency fee basis.[5]

## C. Mr. Smith's Testimony

Mr. Smith testified that he was licensed to practice law in 1970 and that for the last six or seven years he has devoted a substantial portion of his practice to legal malpractice matters.

Mr. Smith's association with the debtor began in February 1998 or March 1998 when Mrs. Spahn contacted him about pursuing a lawsuit against Mr. Keever. Mr. Smith and the debtor (by way of Mrs. Spahn as a stockholder in and the president and chief operating officer of the debtor, and the owner and the operator of several related corporations) thereafter entered into a contract where Mr. Smith would represent Mrs. Spahn, the debtor and others in such a suit and that Mr. Smith would receive, as compensation, 50 percent of any recovery. The contract also called for Mr. Smith to be paid a $20,000 retainer to be applied against the contingency fee and for Mrs. Spahn to be responsible for the payment of that retainer. The suit was filed in May 1998.

In regard to performance under the contract, Mr. Smith testified that as of the date of the hearing, he had received about $5,000 of the retainer. He understood, from a conversation with the trustee, that the estate had no money to pay him any portion of the remainder of that retainer, but despite that fact, Mr. Smith has agreed to represent the estate in the lawsuit based on the promise of the 50 percent contingency fee, a fee Mr. Smith testified was the usual and customary fee in legal malpractice cases.

As to the specific claim, Mr. Smith explained that the lawsuit belongs to the debtor. He testified that the other corporate entities were included as plaintiffs out of an abundance of caution since Mr. Keever's alleged malpractice arose from an aborted plan to merge all of the corporate entities into one corporation and to make a public issue of shares of that corporation. The other corporate entities do not hold claims against Mr. Keever that are separate or different from the debtor's claim. All of the corporate entities named in the complaint are wholly owned and operated by Mrs. Spahn with the possible exception of one, Tax Max, in which her son may be a nominal accommodation shareholder. All of the corporations operated out of the same office and performed symbiotic personal financial services (tax preparation

will represent the estate on a contingency fee basis.

5. Common sense and experience convinces this Court that the trustee's opinion is correct.

and advice, debt consolidation, insurance, and the like) for "middle class" consumers.

Mr. Smith testified that he has assimilated and reviewed a vast amount of documentary evidence in investigating and preparing the lawsuit for trial, but that he has not made an assessment of the value of the case and is unable to offer any opinion regarding the prospect of a recovery or of the possible amount of any recovery. His common practice, he explained, is to tell his clients in legal malpractice cases, that realistically they should not expect any recovery.

■ Mr. Smith testified that he has not and does not represent Mrs. Spahn in any capacity other than as a plaintiff in the state court lawsuit. And in Mr. Smith's opinion, there is no conflict of interest in his representation of the co-plaintiffs in the lawsuit.[6]

6. This Court takes a certain amount of comfort in this opinion from an attorney who specializes in legal malpractice cases. And as a legal matter, the law is clear. There is no conflict of interest inherent in an attorney's representation of multiple plaintiffs or defendants. Consequently, there is no per se prohibition of the practice under ethical rules which govern the conduct of lawyers. A lawyer is prohibited only from representing multiple clients in a common matter if his or her representation of any of the clients *"may* be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests...." Alabama Rules of Professional Conduct Rule 1.7(b). But even if the lawyer's representation of any of the multiple clients *may* be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, he or she may still represent the affected client if the lawyer reasonably believes that representation of the client will not be adversely affected, and the client consents to the representation after having been advised by the lawyer regarding the implications, advantages and risks involved in the lawyer's common representation of the multiple clients. Alabama Rules of Professional Conduct Rule 1.7(b)(1) & (2).

On the other hand, ethical rules do preclude a lawyer who represents two or more clients in a common matter from participating in the making of an aggregate settlement of claims of, or against, those clients, unless each client consents after consultation with the lawyer. That consultation should include a disclosure by the lawyer to the client of the existence and nature of all the claims involved and of the participation of each person in the settlement. See Alabama Rules of Professional Conduct Rule 1.8(g).

A question similar to that involved in the present case arose in the non-bankruptcy case of *Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671 (5th Cir. 1977). In that case, the plaintiff corporation engaged a contractor to build a cigarette manufacturing facility. The contractor hired a construction company to fabricate a warehouse as part of the complex. The construction company in turn subcontracted all of its work to an affiliated corporation. The construction company and the affiliate corporation shared the same officers, directors, stockholders and staff, and operated out of the same offices. At completion of the warehouse, the plaintiff sued the contractor for defective construction. The contractor impleaded the construction company which then filed fourth-party actions against its affiliate and a corporation that provided the affiliate with structural steel and accessories for the facility. The affiliate brought a fifth-party action against the steel supplier for furnishing defective materials. The steel supplier objected to the fact that the construction company and its affiliate were being represented by the same counsel. The trial court refused to disqualify that counsel from representing either party and the steel supplier appealed. The Court of Appeals for the Fifth Circuit, in affirming the trial court's decision, likewise found no conflict of interest in the attorney's dual representation of the construction company and the company's affiliate because: (1) the construction company and its affiliate had a substantial identity of interests; (2) the construction company and its affiliate had agreed to contend that the fault for any alleged defect in the warehouse rested solely with the steel supplier; and (3) the only reason the construction company sued its affiliate was to make possible the impleader of the steel supplier as a fifth-party defendant.

The steel supplier argued that if the affiliate had its own attorneys, that the affiliate would defend more vigorously against the construction company's suit. The court rejected the argument, since the affiliate had no reason to thwart the construction company's claim and a legal victory for the affiliate would be a defeat for its own stockholders if the judgment were obtained at the construction company's expense. The court also rejected the steel supplier's contention that breaches of confidentiality would result from the joint representation, since the steel sup-

Finally, Mr. Smith related to the Court that Mrs. Spahn has agreed, for herself and as the representative of all of the corporate entities, that any recovery in the lawsuit will be paid to the bankruptcy trustee in this case for distribution pursuant to the Bankruptcy Code.[7]

## D. Mrs. Spahn's Testimony

Mrs. Spahn confirmed Mr. Smith's representation that any money recovered in the lawsuit will be paid to the trustee for distribution according to the Bankruptcy Code. And Ms. Spahn added that although she is personally a creditor of the debtor, she was willing to withdraw the proof of claim filed on her behalf and waive any claim she may have to participate in a distribution in this case, if doing so would facilitate the trustee's employment of Mr.

Smith. Mrs. Spahn stated candidly that she does not expect to receive any money from the lawsuit, or from the debtor, even though she has invested a great deal of money in the debtor.

Mrs. Spahn confirmed Mr. Smith's assurance that he has not and does not represent her in any capacity other than as a plaintiff in the state court lawsuit.

## II. Conclusions of Law

Section 327(e) of the Bankruptcy Code governs the matters before the Court.[8] That section provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if *in the best interest of the estate, and if such attor-*

---

plier certainly would share no confidences with the affiliate merely because both were fourth-party defendants, and there could be no unshared confidences as between the construction company and its affiliate given the identity of their shareholders, directors and officers.

7. Mr. Smith testified that he was unaware that the debtor was in bankruptcy when he was retained. He said that he became aware of the bankruptcy prior to filing the lawsuit.

8. The trustee seeks to employ Mr. Smith as *special counsel* pursuant to section 327(e), rather than as *general counsel* pursuant to subsection 327(a). Most courts that have considered the issue have concluded that: (1) subsection 327(e) applies in every case in which a trustee seeks the employment of special, as opposed to general, counsel, whether or not counsel has previously represented the debtor; (2) a prior representation of the debtor is not a prerequisite to application of section 327(e); (3) neither subsection 327(a) nor subsection 327(c) applies when the trustee seeks the employment of special counsel, whether or not the attorney has previously represented a creditor or an insider of the debtor; (4) neither the disinterested standard of subsection 327(a) nor the actual conflict standard of subsection 327(c) applies when an application to employ special counsel is involved; and that (5) the only question involved when an application for employment pursuant to section 327(e) is filed is whether the prospective applicant represents an interest that is adverse either to the debtor or the

estate with respect to the matter the attorney is being employed by the trustee to pursue.

See *Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir.1993), *cert. denied*, 510 U.S. 867, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993); *In re Henlar, Ltd.*, 1997 WL 4567 *3 (E.D.La., Jan. 6, 1997); *In re Lease–A–Fleet, Inc.*, 1992 WL 8334 *1 (E.D.Pa., Jan. 15, 1992); *Film Ventures International, Inc. v. Asher (In re Film Venture International, Inc.)*, 75 B.R. 250, 252 (9th Cir. BAP 1987); *Fondiller v. Robertson (In re Fondiller)*, 15 B.R. 890, 892 (9th Cir. BAP 1981), *appeal dismissed*, 707 F.2d 441 (9th Cir.1983); *In re Pappas*, 216 B.R. 87, 92 (Bankr.D.Conn.1997); *Moore v. Kumer (In re Adam Furniture Industries)*, 191 B.R. 249, 259 (Bankr.S.D.Ga.1996); *In re Brennan*, 187 B.R. 135, 155 (Bankr.D.N.J.1995); *In re Aro-Chem Corp.*, 181 B.R. 693, 699 (Bankr. D.Conn.1995), *appeal dismissed*, 198 B.R. 425 (D.Conn.1996); *In re Black & White Cab Co.*, 175 B.R. 24, 26 n. 2 (Bankr.E.D.Ark.1994); *DeVlieg–Bullard, Inc. v. Natale (In re DeVlieg, Inc.)*, 174 B.R. 497, 502 (N.D.Ill.1994), *appeal dismissed*, 56 F.3d 32 (7th Cir.1995); *In re Maynard*, 172 B.R. 353, 355 (Bankr.M.D.Fla. 1994); *In re American Avia Associates–SEA*, 150 B.R. 24, 26 (Bankr.S.D.Tex.1992); *In re Hub Business Forms, Inc.*, 146 B.R. 315, 319 (Bankr.D.Mass.1992); *In re Scranton Electric Construction Co.*, 105 B.R. 1, 2 (Bankr. M.D.Pa.1989); *In re Statewide Pools, Inc.*, 79 B.R. 312, 314 (Bankr.S.D.Ohio 1987); *In re Inslaw*, 55 B.R. 502, 504 (Bankr.D.D.C.1985); *Frankford Trust Co. v. Allanoff Trust Co. (In re Dublins Properties)*, 20 B.R. 616, 624 (Bankr. E.D.Pa.1982), *rev'd in part on other grounds*, 29 B.R. 407 (E.D.Pa.1983).

*ney does not represent or hold any interest adverse to the debtor or to the estate* with respect to the matter on which such attorney is to be employed. 11 U.S.C. § 327(e) (emphasis added). Consequently, the issues before the Court are: (1) is Mr. Smith's employment in the best interest of the estate, and (2) if Mr. Smith is employed, would he, by virtue of his past, present, or anticipated future representation of the estate, the corporate debtor, the debtor's president, and the related corporate entities as co-plaintiffs in the lawsuit, represent an interest adverse to the debtor or the bankruptcy estate.

## A. Best interest of the Estate

■ As to the first issue, the representations of the trustee and the uncontroverted testimony of Mr. Smith establish that the trustee's employment of Mr. Smith is in the best interest of the estate.[9] Consequently, based on those representations and the testimony, the Court finds that employment of Mr. Smith is in the best interest of the estate.

## B. No Adverse Interest

As to the second issue, for the reasons expressed below, the Court finds that Mr. Smith does not, and would not, represent an interest that is adverse to either the debtor or the bankruptcy estate.

### 1. Defendants

■ A corporation may act only through its agents. And according to the testimony of Mr. Smith the lawsuit is based on the professional relationship and dealings by Mrs. Spahn, on behalf of all of the corporations, with Mr. Keever. As this affects the defendants, a review of the complaint indicates that liability to all of the named plaintiffs originates from a single cause of action based on a single set of facts directed to and involving Mrs. Spahn and Mr. Keever. Any liability of the remaining named defendants would flow from the actions of Mr. Keever only vicariously and derivatively. Consequently, the plaintiffs, if entitled at all, are entitled as against the defendants to a *single* verdict on the issue of liability.

### 2. Plaintiffs

■ In regard to the plaintiffs, there is but one cause of action based on a solitary set of facts. Therefore, Mr. Smith has no reason or opportunity to favor one plaintiff over another in prosecuting the liability portion of the lawsuit against Mr. Keever. Similarly, from the plaintiffs' collective perspective, because the only human actor in the circumstances which resulted in the lawsuit was Mrs. Spahn, there is no danger of cross-claims being filed between the co-plaintiffs, or of evidence being submitted in support of the lawsuit by one or more plaintiffs that conflicts with evidence that might be submitted by one or more of the other plaintiffs. The evidence would be the same, whether the lawsuit was prosecuted by one plaintiff or all of the named plaintiffs or whether one lawyer represented all plaintiffs or each was represented separately.[10]

---

9. The trustee represented to the Court that the lawsuit filed by Mr. Smith is the only asset of the bankruptcy estate from which a dividend to unsecured creditors may be realized.

10. Mr. Keever argues that the trustee should not be allowed to employ Mr. Smith because, if Mr. Smith is employed, that he (Mr. Keever) will thereafter be unable to obtain from Mr. Smith any information that is divulged to Mr. Smith by Mrs. Spahn or the other plaintiffs. In the brief filed in support of his objection to Mr. Smith's employment, Mr. Keever states:

When asked at the October hearing about conversations of Covenant's corporate representatives about the matter on which Mr. Smith is being employed, Mr. Smith raised the attorney-client privilege and refused to disclose the conversations between Covenant's corporate representatives and himself. The trustee has a duty to the debtor corporation's estate and its creditors pursuant to Bankruptcy Code § 704 to investigate the financial affairs of the debtor. In the event Mr. Smith is employed to represent the trustee in this case, he will be prevented from asking his own attorney about matters on which such attorney (Mr. Smith) is to be employed, pursuant to § 327(e).

### 3. Liability

As to the liability portion of the suit, there is no possibility of either cross-claims or conflicting evidence, or of inconsistent verdicts regarding liability; therefore, no interest of any one plaintiff appears to be adverse to that of any other.

### 4. Damages

As to the damage portion of the suit, because of Mrs. Spahn's accession, (personally and as representative of all of the corporate entities), that any recovery from the suit will be paid to the bankruptcy trustee, any potential disputes among the named plaintiffs (or between them and the trustee) over the distribution of any funds recovered in the lawsuit is eliminated.

## III. Conclusion

 This Court finds that the duty owed by Mr. Smith to the collective plaintiffs is to pursue a single cause of action on behalf of all plaintiffs and to obtain a recovery for the plaintiffs against the defendants. The interests of the plaintiffs, including the estate, in obtaining that recovery are unified and identical; they do not conflict and are not adverse.[11] Conse-

*Brief in Support of Objection to the Employment of John Joseph Smith, Jr., as Special Counsel for the Trustee,* November 2, 1998.

The Court disagrees. Mr. Smith may not divulge confidences communicated to him by Mrs. Spahn or any of the other non-bankruptcy plaintiffs *if* he is otherwise precluded from doing so because of his confidential relationship with those plaintiffs. That prohibition would not be changed if the trustee is permitted to employ Mr. Smith. And *if* Mr. Smith is forbidden from sharing confidences communicated to him by Mrs. Spahn or any of the other non-bankruptcy plaintiffs with the trustee because of his confidential relationship with those plaintiffs, the fact that the trustee is permitted to employ Mr. Smith adds no additional or separate basis for Mr. Smith's inability to share that information.

In fact, the law may permit the opposite. If the trustee is not permitted to employ Mr. Smith, then Mr. Smith will most definitely be duty bound to claim the attorney-client privilege as to anything communicated to him by any of the non-bankruptcy plaintiffs. However, if the trustee is permitted to employ Mr. Smith, then it may be that neither Mr. Smith, nor the non-bankruptcy plaintiffs will be able to claim the privilege as to those communications. It is well settled and universally accepted that the attorney-client privilege, "although quite conclusive as between an attorney and a sole client, does not apply as to communications *between the parties* involved in a given transaction which has been submitted to an attorney for action or advice by two or more persons for their mutual benefit." *Nationwide Mutual Insurance Co. v. Smith,* 280 Ala. 343, 348, 194 So.2d 505, 509 (1966), *quoting Henke v. Iowa Home Mutual Casualty Company,* 249 Iowa 614, 87 N.W.2d 920 (1958) (emphasis added). "It is widely recognized that where an attorney previously had represented, or had been consulted by, subsequently opposing parties on a matter of common or mutual interest or concern, these prior communications or consultations between the attorney and the party or parties are admissible in the subsequent controversy." Charles C. Marvel, Annotation, *Applicability of Attorney-client Privilege to Evidence or Testimony in Subsequent Action Between Parties Originally Represented Contemporaneously by Same Attorney, with Reference to Communication to or from One Party,* 4 A.L.R.4th 765 (1981).

*Accord Simpson v. Motorists Mut. Ins. Co.,* 494 F.2d 850, 855 (7th Cir.1974), *cert. denied,* 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); *Opus Corp. v. International Business Machines Corp.,* 956 F.Supp. 1503, 1506 (D.Minn.1996); *North River Ins. Co. v. Philadelphia Reinsurance Corp.,* 797 F.Supp. 363, 366 (D.N.J.1992); *U.S. v. Moscony,* 697 F.Supp. 888, 894 (E.D.Pa.1988); *Central Nat. Ins. Co. of Omaha v. Medical Protective Co. of Fort Wayne, Indiana,* 107 F.R.D. 393, 394 (E.D.Mo.1985); *In re Intern., Systems and Controls Corp. Securities Litigation,* 91 F.R.D. 552, 558 (S.D.Tex.1981), *vacated on other grounds,* 693 F.2d 1235 (5th Cir.1982); *In re Colocotronis Tanker Securities Litigation,* 449 F.Supp. 828, 830 (S.D.N.Y.1978); *Valente v. Pepsico, Inc.,* 68 F.R.D. 361, 368 (D.Del. 1975); *Waste Management, Inc. v. International Surplus Lines Ins. Co.,* 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322, 328 (1991); *Cummings v. Sherman,* 16 Wash.2d 88, 132 P.2d 998, 1003 (1943).

11. Often times a trustee may seek to employ an attorney to represent the estate in a cause of action designed to generate a recovery of money or property for an estate where the attorney is a creditor of the estate, or where the attorney represents other persons involved in the same cause of action who will share in any recovery, (such as insider co-

quently, the Court concludes that the trustee's application under section 327(e) is due to be approved.[12] Mr. Smith does

plaintiffs), or where the attorney represents persons who will share in a distribution of the bankruptcy estate and will, therefore, benefit from the increase in funds available for distribution that may result from a recovery in the action, (such as unsecured creditors). In those circumstances, the interests of the bankruptcy estate are parallel with or identical to, rather than adverse to, the interests of the attorney and the other parties that he or she represents. Consequently, section 327 will not ordinarily preclude the employment of the attorney in such circumstances, despite the fact that the attorney may be a creditor or may represent the debtor, an insider co-plaintiff, or a creditor.

Simply stated, "There is no conflict where the interests represented by special counsel are parallel, rather than adverse." *Moore v. Kumer (In re Adam Furniture Industries)*, 191 B.R. 249, 259 (Bankr.S.D.Ga.1996) (creditor's attorney). See *Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir.1993) (attorney for petitioning creditor in involuntary case), *cert. denied*, 510 U.S. 867, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993); *Dallas Cabana, Inc. v. Collier (In re Dallas Cabana, Inc.)*, 469 F.2d 606, 608 (5th Cir.1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973); *In re Henlar, Ltd.*, 1997 WL 4567 *3 (E.D.La., Jan. 6, 1997) (attorney who was a creditor); *In re Lease–A–Fleet, Inc.*, 1992 WL 8334 *1 (E.D.Pa., Jan. 15, 1992) (attorney who represented individual guarantors of corporate debtor's debt); *National Westminster Bank, USA v. Yaeger (In re RPC Corp.)*, 114 B.R. 116, 120 (M.D.N.C.1990) (attorney for debtor and debtor's chief executive officer who personally guaranteed debtor's debts); *In re WVS Investment Joint Venture*, 1990 WL 191864 *2 (D.Col., Jan. 4, 1990) (attorney for related corporate debtor); *Film Ventures International, Inc. v. Asher (In re Film Venture International, Inc.)*, 75 B.R. 250, 252 (9th Cir. BAP 1987) (attorney who was a creditor and held charging lien on subject of law suit); *Fondiller v. Robertson (In re Fondiller)*, 15 B.R. 890, 892 (9th Cir. BAP 1981), *appeal dismissed*, 707 F.2d 441 (9th Cir.1983) (creditors' attorney); *In re AroChem Corp.*, 181 B.R. 693, 703 (Bankr.D.Conn.1995), *appeal dismissed*, 198 B.R. 425 (D.Conn.1996) (attorney for individual, who was a shareholder and former director of debtors and a creditor of the bankruptcy estates, and corporate affiliates of that individual); *In re Milford Group, Inc.*, 164 B.R. 899, 903 (Bankr.M.D.Pa.1993) (attorney for creditor and corporate debtor's shareholders); *In re American Avia Associates–SEA*, 150 B.R. 24, 26 (Bankr.S.D.Tex.1992) (attorney for corporate debtors and two non-debtor re-lated corporations); *In re Scranton Electric Construction Co.*, 105 B.R. 1, 2 (Bankr. M.D.Pa.1989) (counsel for debtor's minority shareholders); *In re Statewide Pools, Inc.*, 79 B.R. 312, 315 (Bankr.S.D.Ohio 1987) (attorney for debtor and debtor's former officer); *In re Inslaw*, 55 B.R. 502, 505 (Bankr.D.D.C. 1985) (attorney who was a creditor); *In re Sally Shops, Inc.*, 50 B.R. 264, 267 (Bankr. E.D.Pa.1985) (creditor's attorney); *In re Iorizzo*, 35 B.R. 465, 468 (Bankr.E.D.N.Y.1983) (one attorney employed to represent separate bankruptcy estates of five corporate debtors and individual principals of the corporations); *Frankford Trust Co. v. Allanoff (In re Dublin Properties)*, 20 B.R. 616, 624 (Bankr.E.D.Pa. 1982) (attorney for general partner of the debtor), *rev'd in part on other grounds*, 29 B.R. 407 (E.D.Pa.1983); *Hassett v. McColley (In re O.P.M. Leasing, Inc.)*, 16 B.R. 932, 937 (Bankr.S.D.N.Y.1982) (same attorney employed to represent estate of corporate debtor and estate of debtor's wholly owned subsidiary).

12. Many courts have approved applications in similar situations. In *In re AroChem Corp.*, 181 B.R. 693 (Bankr.D.Conn.1995), *appeal dismissed*, 198 B.R. 425 (D.Conn.1996), the Chapter 7 trustee of several consolidated corporate-debtor cases filed an application to employ a law firm as special counsel to represent the estates in certain non-bankruptcy lawsuits against various defendants, who themselves were creditors of the corporate-debtors. At the time, in separate lawsuits pending against the same defendants named in the trustee's lawsuit, the law firm represented an individual who was a shareholder and former director of one or both of the debtors (and a creditor of the various bankruptcy estates) and also represented certain corporate affiliates of that individual. In conjunction with his application to employ, the trustee filed a motion for approval of an agreement with the individual and that person's affiliates that would create a common fund from any net recoveries from which equal shares would be awarded to the individual and the trustee, after deduction of expenses of recovery, including counsel fees to the law firm that the trustee was seeking to employ.

At the hearing on the application to employ, the trustee testified that the cost to the estate of pursuing the action would be from one to two million dollars, that the estate lacked the funds necessary to pay those costs or to hire an attorney on an hourly basis, and thus that the trustee was limited to employing special

counsel who was willing to advance costs and provide services on a contingency fee basis. Consequently, according to the trustee's testimony, he would be unable to prosecute the action unless the employment of the particular law firm, (which was willing to undertake the prosecution of the trustee's action on a contingency fee basis because of its pre-existing representation of the individual against the identical defendants on similar claims which arose from a largely common pattern of facts), was authorized. Certain creditors, who were defendants in the various non-bankruptcy actions, objected to the application, arguing that the proposed dual representation of the individual and the trustee was improper under section 327.

The court concluded that, because the application was brought under subsection (e) of section 327, neither the disinterested standard of subsection 327(a) nor the actual conflict standard of subsection 327(c) was applicable and the only issue was whether the prospective applicant represented an interest that was adverse either to the debtor 'or the estate. The court wrote, "the question of adverse interest ultimately turns on whether the particular facts at issue within the scope of the proposed employment call into question the incentive of counsel to act with undivided loyalty to the estate." 181 B.R. at 700. Based on that standard, the court concluded that the law firm the trustee sought to employ did not represent an interest adverse to the bankruptcy estate since, with respect to the trustee's action, there was an identity, rather than a conflict, of the interests represented by the law firm. The court concluded, "Caddell has an incentive to vigorously pursue the Wells and the Trustee claims against their common adversaries." 181 B.R. at 703.

In *In re American Avia Associates–SEA*, 150 B.R. 24 (Bankr.S.D.Tex.1992), four related Chapter 11 corporate debtors had been, before bankruptcy, joint venturers with an entity for the purpose of constructing, leasing and maintaining air cargo facilities at air terminals. For each airport project a separate joint venture was formed by the parties. Each of the joint ventures was also a debtor in a Chapter 11 case. The entity's role in the joint ventures was to obtain financing for the ventures through its parent corporation. The entity and its corporate parent attempted to wrongfully withdraw from the projects and committed other acts to the detriment of the projects. Consequently, the corporate debtors and two non-debtor, related corporations filed suit against the entity and its corporate parent in state court. The complaint requested monetary damages and a temporary injunction. The joint venture debtors joined in the suit as plaintiffs for the purpose of seeking the temporary injunction. The principals of

the corporate debtors also joined as additional plaintiffs seeking to declare their guarantees of the ventures' indebtedness to the defendants invalid. The lawsuit was a potential significant asset of the bankruptcy estates.

Prior to the bankruptcy filings, the corporate debtors entered into a contingent fee contract with a law firm to represent the plaintiffs in the state court case. After bankruptcy, the corporate debtors sought the approval of the bankruptcy court to employ the firm to continue the lawsuit. The defendants in the state court action opposed the debtors' continued employment of the law firm. The parties to the litigation had, to that point, spent over $1.4 million in attorney fees and expenses.

The bankruptcy court held that continued employment of the firm was in the best interest of the bankruptcy estate because the law firm was experienced in representing plaintiffs in similar cases, the law firm was experienced in conducting litigation on behalf of multiple plaintiffs, the law firm had obtained substantial monetary judgments for clients in similar cases, and that there would be extreme detriment to the plaintiffs' case for another firm to take over the suit. The court concluded that the firm, by representing the multiple plaintiffs in the state court suit, was not representing any interest that was adverse to the interests of the bankruptcy case because the plaintiffs had a complete unity of interest in finding the defendants liable for their alleged actions, the joint ventures and corporate debtors had to be successful in order for the principals to prevail on their claims, a judgment in the litigation would either be favorable to all of the plaintiffs or adverse to all of the plaintiffs, there was no inconsistency in the evidence that would be presented in the state court case or incompatibility in the plaintiffs' positions in the case, and any settlement of the litigation would require the bankruptcy court's approval.

In *In re Lease–A–Fleet, Inc.*, 1992 WL 8334 (E.D.Pa., Jan. 15, 1992), the Chapter 11 debtor filed an application to employ special counsel to pursue non-bankruptcy RICO litigation against one of the debtor's creditors. The attorney that the debtor sought to employ also represented the individual guarantors of the debtor's debt to the creditor in a separate action against the creditor. The bankruptcy court authorized the employment under section 327(e). On appeal, the district court concluded that, since the object of both the debtor's suit and the guarantors' suit was to obtain a determination that the debtor owed no obligation to the creditor, the interests of the plaintiff's in both actions were identical, rather than adverse to one another, so that employment of the attorney was not precluded by section 327(e).

In *In re Milford Group, Inc.*, 164 B.R. 899 (Bankr.M.D.Pa.1993), the Chapter 7 trustee sought to employ an attorney as special counsel to represent the estate in a lender liability lawsuit that was pending in state court when the bankruptcy case was filed. That attorney had instituted the suit prior to bankruptcy on behalf of the debtor, the debtor's shareholders and the debtor's largest unsecured creditor. The other plaintiffs had agreed to pay the attorney on an hourly basis while the attorney agreed to represent the trustee on a contingency fee basis. Creditors of the bankruptcy estate, who were also defendants in the state court litigation, objected to employment of the attorney on the grounds that a conflict of interest might arise should the trustee later sue the shareholders for fraud, mismanagement or any other impropriety. The bankruptcy court concluded that the representations by the attorney of the estate, of the debtor's shareholders, and of the debtor's major unsecured creditor was authorized because: (1) the conflict cited by those opposing the employment was a potential, rather than an actual conflict; (2) the interests of the plaintiffs in the litigation, rather than being adverse to one another, were parallel; (3) the attorney was a competent lender liability lawyer; and (4) few lawyers nationally would undertake representation in a lender liability case on a contingent fee basis and advance the costs necessary to pursue that litigation.

In *National Westminster Bank, USA, v. Yaeger (In re RPC Corp.)*, 114 B.R. 116 (M.D.N.C. 1990), the district court held that the Chapter 7 trustee of a corporate debtor could employ a law firm to prosecute a lender liability suit against the bank which held a security interest in all of the debtor's assets, even though the law firm was already representing the debtor's chief executive officer in non-bankruptcy litigation against the bank. The bank's loans were personally guaranteed by the debtor's chief executive officer. The bank declared the loans in default and the debtor surrendered its assets for liquidation. Several days before the scheduled liquidation sale, an involuntary bankruptcy proceeding was filed against the debtor. The bankruptcy court granted relief from the bankruptcy stay to conduct the liquidation sale. The bank brought suit in the federal district court against the debtor's chief executive officer on his personal guaranty obligations to collect the deficiency owed on the loans after liquidation of the collateral. The district court granted summary judgment in favor of the bank on its claim, but certain counterclaims asserted against the bank by the officer remained pending before that court. The debtor's Chapter 7 trustee determined that the most valuable asset of the bankruptcy estate was a claim against the bank. The trustee asked the law firm representing the debtor's chief executive officer in the district court litigation to represent the estate because that attorney was experienced in lender liability litigation and intimately familiar with the particular facts that formed the basis of the estate's claim, which was essentially the same as the counterclaim asserted by the debtor's chief executive officer' claim against the bank in the district court litigation. The trustee had no funds with which to retain the firm, so a contingency fee agreement was reached under which the firm would receive one-third of any recovery in the estate's favor. The bank objected to the trustee's application to employ the firm as special counsel to prosecute the claim against the bank on the grounds that the firm was representing the debtor's chief executive officer, who claimed, by way of indemnity, in the district court litigation, to be a secured creditor of the debtor. Other creditors of the estate also objected to the application.

The court defined the term "adverse interest" "to include possessing or asserting any interest that would lessen the value of the estate or that would create an actual or potential dispute in which the estate is a rival claimant," 114 B.R. at 119, and concluded that the firm did not, by virtue of its simultaneous representation of both the estate and the debtor's chief executive officer in separate lawsuits against the bank, represent and interest that was adverse to the estate. In reaching that conclusion, the court considered that: (1) the firm was acting only as special counsel in the estate's lender liability claim against the bank for the specific and limited purpose of recovering assets for the estate; (2) the estate's suit in the bankruptcy court and the suit in the district court both involved the same basic issues and were essentially the same claim against the bank; (3) the interests of the estate and the debtor's chief executive officer were identical with respect to the firm's duties as special counsel since both would benefit from recovery of funds from the bank; (4) the firm had already conducted extensive investigation concerning the claim against the bank so that retention of the firm would save the estate the added expense that would be generated by retention of counsel unfamiliar with the facts and proceedings; (5) there was no potential for conflict in the event of a recovery by the estate since the debtor's chief executive officer, as an unsecured creditor (there were no assets in the debtor's estate to satisfy his security interest), could not receive any treatment either more or less favorable than any unsecured creditor; (6) the trustee's control over settlement negotiations would preclude a conflict of interest in the settlement process.

In *In re WVS Investment Joint Venture*, 1990 WL 191864 (D.Col., Jan. 4, 1990), the Chapter 11 corporate debtor, WVS, sought to employ, as special counsel to continue the prosecution of a state court lawsuit, the attorney who filed the lawsuit on behalf of the debtor on the same day that the debtor's bankruptcy petition was filed. The attorney also represented, in that action, a co-plaintiff related corporation, Tri–Crown, which owed money to WVS and was a debtor in its own Chapter 11 case. The attorney's fees in the lawsuit were to be underwritten and guaranteed by an individual who was a ⅓ equity holder in both corporations, the managing joint venturer of WVS, the owner of 100% voting control of Tri–Crown's stock, the president and a member of the board of directors of Tri-Crown, the guarantor on all of the secured debt of both corporations, and a creditor of WVS. The bankruptcy court held that the attorney was disqualified from representing WVS under section 327(a). The district court reversed, holding that section 327(a) did not preclude the attorney from representing both corporations in the state court lawsuit because the corporations did not have conflicting interests as to the litigation against the defendant in that action and, in that regard, stated:

> Rather their interests are closely aligned. The action arises out of the same set of facts and there is a singleness of purpose on the part of the two debtors—to prevail in the action against AFS & L. To the extent their interests are parallel, special counsel may represent both debtors. If a dispute later arises, for example, over recovery, if any, the conflict can be resolved at that time.
>
> If the attorney represents parallel interests, the court must consider whether the estate could be more efficiently administered by hiring one law firm. In the present case, it would be much more efficient to hire one law firm to represent co-plaintiffs in their litigation against AFS & L.

1990 WL 191864 *2.

In *In re Scranton Electric Construction Co.*, 105 B.R. 1 (Bankr.M.D.Pa.1989), the sole remaining asset of the bankrupt estate was a minority shareholder's derivative action pending in the federal district court. To represent him in the pending action, the trustee sought to employ an attorney that had served as minority shareholder's counsel throughout the entire district court proceeding. The attorney undertook representation of the shareholders on a contingency fee basis and the trustee proposed to employ the attorney to represent the estate, jointly with the shareholders, on the same basis. The defendants in the non-bankruptcy action objected to the employment on the grounds that the attorney, by virtue of his representation of the stockholders, was not a disinterested person under section 327(a). The bankruptcy court held that the interest of the stockholders in the litigation was not adverse to that of the estate and that, consequently, employment of the attorney by the trustee was authorized under section 327(e).

In *In re Statewide Pools, Inc.*, 79 B.R. 312 (Bankr.S.D.Ohio 1987) the Chapter 7 trustee applied for authority to employ an attorney as special counsel to represent the estate in collecting the debtor's accounts receivable and to continue a lawsuit filed by the attorney for the debtor pre-petition. The attorney, in addition to representing the debtor corporation pre-petition, was also a creditor of the debtor and represented an officer of the debtor corporation. The defendant in the lawsuit objected to the attorney's employment on the grounds that the attorney was not a "disinterested person" under section 327(a). The bankruptcy court held that the attorney was employable by the trustee under section 327(e) because the interest of the attorney coincided with the interest of the estate in relation to the matters that the attorney would be employed to pursue and that both would benefit from the collection of the accounts receivable and a recovery in the lawsuit.

See also *Stoumbos v. Kilimnik*, 988 F.2d 949 (9th Cir.1993) (Chapter 7 trustee, under section 327(e), could employ attorney for petitioning creditor in involuntary case to prosecute preference proceedings, where creditor represented by attorney was not the object of the preference action and, with regard to preference claims, interests of creditor and trustee coincided, since if money was recovered for the estate the creditor's pro rata distribution share would be increased), *cert. denied*, 510 U.S. 867, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993); *In re Henlar, Ltd.*, 1997 WL 4567 (E.D.La., Jan. 6, 1997) (Chapter 7 trustee could employ attorney to represent estate in litigation instituted pre-petition on behalf of the debtor even though attorney held claim against the estate for pre-petition work performed on litigation); *DeVlieg–Bullard, Inc. v. Natale (In re DeVlieg, Inc.)*, 174 B.R. 497 (N.D.Ill.1994), *appeal dismissed*, 56 F.3d 32 (7th Cir.1995) (Chapter 11 trustee could employ law firm as counsel for special purpose of continuing adversary proceedings commenced by law firm before trustee was appointed on behalf of corporate debtor against debtor's insiders for breaches of fiduciary duties and to recover fraudulent conveyances, even though debtor terminated employment of the law firm because the law firm initiated the litigation without the debtor's authorization); *Film Ventures International, Inc. v. Asher (In re Film Venture International, Inc.)*, 75 B.R. 250 (9th Cir. BAP 1987) (Chap-

ter 11 debtor could employ attorney to pursue lawsuit to recover film purportedly owned by debtor even though attorney had pre-petition claim against debtor for services rendered in connection with the litigation and debtor had granted the attorney a security interest in the film four days before filing bankruptcy to secure payment of those fees and future fees); *Fondiller v. Robertson (In re Fondiller)*, 15 B.R. 890 (9th Cir. BAP 1981), *appeal dismissed*, 707 F.2d 441 (9th Cir.1983) (Chapter 7 trustee could employ law firm which represented creditors for the purpose of investigating and attempting to recover assets allegedly concealed or fraudulently conveyed by the Chapter 7 debtor); *In re Lan Dan Enterprises, Inc.*, 221 B.R. 93 (Bankr.S.D.N.Y.1998) (Chapter 11 debtor-tenant could employ law firm as special counsel to oppose landlord's motion for stay relief to proceed with state-court eviction proceeding even though law firm had received retainer for the representation from a principal of the debtor).

See also *In re Pappas*, 216 B.R. 87 (Bankr. D.Conn.1997) (Chapter 7 trustee could employ law firm to prosecute, on a contingency basis, fraudulent conveyance and avoidance actions even though attorney represented creditor and creditor had agreed to pay the firm's current legal fees and costs during its representation of the trustee in the adversary proceeding and firm had agreed to reimburse creditor for fees and costs advanced if a contingency fee was recovered); *In re Mundo Custom Homes, Inc.*, 214 B.R. 356 (Bankr. N.D.Ill.1997) (Chapter 7 trustee could employ law firm to prosecute fraudulent transfer claims on behalf of estate even though law firm had previously represented petitioning creditors in prior, unsuccessful involuntary case, and was still in possession of check representing fees and costs awarded to debtor corporation in connection with involuntary case which debtor's principals claimed by way of assignment); *In re Cockings*, 195 B.R. 735 (Bankr.E.D.Ark.1996) (Chapter 7 trustee could employ attorney as special counsel to prosecute remaining issues in state court litigation instituted by the attorney on behalf of the debtor pre-petition even though the attorney had a charging lien against any recovery in the litigation); *Moore v. Kumer (In re Adam Furniture Industries)*, 191 B.R. 249 (Bankr. S.D.Ga.1996) (Chapter 7 trustee could employ creditors' attorney to prosecute adversary proceeding to recover property allegedly transferred from the debtor to the related corporations and the principals of those organizations); *In re Brennan*, 187 B.R. 135 (Bankr.D.N.J.1995) (Chapter 11 debtor could employ attorney as special counsel to handle complex litigation involving securities violations, even though attorney represented debt-

or pre-petition and estate had possible preference claim against attorney).

See also *In re Black & White Cab Co.*, 175 B.R. 24 (Bankr.E.D.Ark.1994) (corporate debtor-in-possession could, under section 327(e), hire attorney for the special purpose of representing the debtor corporation in an investigation of Medicaid fraud being conducted by the F.B.I., even though attorney had represented debtor for many years and was the son of the debtor's president and sole shareholder); *In re Maynard*, 172 B.R. 353 (Bankr.M.D.Fla.1994) (Chapter 7 trustee could employ law firm as special counsel to pursue adversary proceeding to recover fraudulent transfer even though law firm had represented creditor in successful challenge to debtor's right to general discharge); *In re Hub Business Forms, Inc.*, 146 B.R. 315 (Bankr.D.Mass.1992) (Chapter 11 debtor could employ attorney for special purpose of collecting debtor's accounts receivable on a contingent fee basis even though the attorney held an unsecured claim for pre-petition services and was a member of the unsecured creditors' committee); *Roberts v. Harris (In re Harris)*, 101 B.R. 210, 212 (Bankr.E.D.Cal. 1989) (Chapter 7 trustee was not precluded under section 327(a) or (c) from employing creditor's attorney as special counsel to prepare objection to debtors' claim of exemptions); *Chittenden Trust Co. v. Sebert Lumber Co. (In re Vermont Toy Works, Inc.)*, 82 B.R. 258 (Bankr.D.Vt.1987) (Chapter 7 trustee could employ attorney for an unsecured creditor for the purpose pursuing a proceeding to marshal assets and to pierce the debtor's corporate veil of debtor where any relief obtained through the attorney's efforts would benefit the estate in what was otherwise a no-asset case, the potential benefit that might inure to the unsecured creditor represented by the attorney from the attorney's efforts would be no greater than the benefit other unsecured creditors might receive from those efforts, and, absent participation by the unsecured creditor's attorney through the application of resources advanced by the unsecured creditor, the trustee was unable to actively engage in the litigation), *rev'd on other grounds*, 135 B.R. 762 (D.Vt.1991).

See also *In re G & H Steel Service, Inc.*, 76 B.R. 508 (Bankr.E.D.Pa.1987) (attorney could be appointed as special counsel for the sole purpose of representing three corporate debtors, whose estates were being jointly administered, in an adversary proceeding against former employees of the debtors based on theft of services and loss of corporate opportunities, even though the attorney had formerly been a stockholder and officer of one of the debtors and of a subsidiary corporation of that debtor, and was a guarantor and indemnitor of certain corporate obligations, and had been involved in several business transac-

not, and will not, represent any interest of any plaintiff in the state court case which interest is adverse to the interest of the debtor or the interest of the bankruptcy estate.[13]

tions with the principals of the debtor); *In re Renninger Mason Contractors, Inc. v. Reigle*, 58 B.R. 516 (Bankr.E.D.Pa.1986) (Chapter 7 trustee could employ attorney for special purpose of pursuing adversary proceedings to avoid and recover preferential transfers even though attorney represented three petitioning creditors in involuntary Chapter 7 case); *In re Inslaw*, 55 B.R. 502 (Bankr.D.D.C.1985) (Chapter 11 debtor could employ attorney for special purpose of assisting general bankruptcy counsel in initial phases of case, holding discussions with potential providers of capital to allow reorganization, and conducting negotiations at highest level of Department of Justice in attempt to settle contract dispute, even though pre-petition executory contract existed between attorney and debtor for debtor to supply computer software to the attorney, and attorney had made advance to debtor against future performance).

See also *In re Sally Shops, Inc.*, 50 B.R. 264 (Bankr.E.D.Pa.1985) (Chapter 7 trustee could employ attorney for special purpose of pursuing litigation against two former officers the debtor corporation to recover monies allegedly withdrawn by officers for their personal use from the debtor's corporate accounts even though attorney had previously represented a creditor of debtor in a suit against one officer and his accountants); *In re Iorizzo*, 35 B.R. 465 (Bankr.E.D.N.Y.1983) (trustee for five related corporate Chapter 11 debtors and two individual Chapter 11 debtors who were principals of the corporate debtors could employ same attorney for all of the estates of those debtors for the special purpose of investigating and recovering assets of the debtors); *Frankford Trust Co. v. Allanoff, (In re Dublin Properties)*, 20 B.R. 616 (Bankr.E.D.Pa.1982) (Chapter 11 limited partnership debtor could employ attorney, who was also attorney for debtor's general partner, to institute litigation against other former general partners of the debtor), *rev'd in part on other grounds*, 29 B.R. 407 (E.D.Pa.1983); *Hassett v. McColley (In re O.P.M. Leasing, Inc.)*, 16 B.R. 932 (Bankr. S.D.N.Y.1982) (trustee of Chapter 11 corporate debtor and debtor's parent corporation could employ same attorney for both estates to pursue lawsuit regarding ownership of bank stock even though it was unclear as to which debtor owned the stock).

13. The result would be the same even if subsections (a) and (c) of 11 U.S.C. § 327 governed the issues in this case, rather than subsection (e). Section 327(a) provides that "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." *Id.* Section 327(c) provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." *Id.* As discussed above, there is no actual conflict of interest involved in Mr. Smith's concurrent representation of the estate, Mrs. Spahn and the other co-plaintiffs in the state court suit and no plaintiff in that lawsuit has an interest which is adverse to any other plaintiff.

Similarly, Mr. Smith is a disinterested person as that term is defined in 11 U.S.C. § 101(14). According to subsection (14) of section 101, a "disinterested person" is someone who:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C. § 101(14).

Without question, Mr. Smith is not an equity security holder or investment banker or an attorney for an investment banker, and is not a director, officer or employee of the debtor or an investment banker.

Mr. Smith is not a creditor of the debtor because his claim, if he presently has any, did not arise until after the Chapter 11 order for

## IV. Order

Based on the record in this case and the arguments of counsel, the Court finds that the trustee's *Application for Approval of Employment of Special Counsel* should be approved and the *Objection to Application for Approval of Employment of John Joseph Smith, Jr.* filed by Mr. William Michael Keever and Stewart Keever, L.L.C. should be overruled. It is therefore **ORDERED, ADJUDGED AND DECREED** that:

1. The *Application for Approval of Employment of Special Counsel* is **APPROVED** and the trustee is authorized to employ Mr. John Joseph Smith, Jr. as special counsel for the purposes and under the terms set out in the trustee's application; and,

2. The *Objection to Application for Approval of Employment of John Joseph Smith, Jr.* is **OVERRULED.**

relief. By combined operation of section 101(10)(A) and section 348, a creditor, for purpose of the Bankruptcy Code, is a person who holds a claim that arose before the debtor filed a bankruptcy petition. A creditor is defined in section 101(10)(A) as an "entity that has a claim against the debtor that arose at the time of or *before* the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (emphasis added). Mr. Smith's contingent claim, if any, for services rendered in connection with the lawsuit before conversion, came into being after the date of the filing of the Chapter 11 petition and an order for relief under that chapter arose. Conversion of the case to Chapter 7, although it triggered a new order for relief, did not, for purposes of section 101(10)(A), effect a change in the date of the "order of relief." Section 348(a) provides that the "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, *does not effect a change in the date of* the filing of the petition, the commencement of the case, or *the order for relief.*" 11 U.S.C. § 348(a) (emphasis added). And conversion of the case did not transform Mr. Smith's potential post-petition, administrative claim into a pre-petition debt. Section 348(d) states, "A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, *other than a claim specified in section 503(b)* of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." 11 U.S.C. § 348(d) (emphasis added).

A creditor for purposes of the Bankruptcy Code, must possess a claim. A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5) (emphasis added). To say that Mr. Smith has even a contingent claim at this point would require convoluted logic. Without Mr. Smith's representation there would not be any fund from which that claim, or the claim of any other so-called creditor may be satisfied. To adhere to Mr. Keever's wishes and disqualify Mr. Smith would leave Mr. Smith with a claim that was less than contingent; it would exist in theory only. In contrast, see *In re Fulgham Enterprises, Inc.*, 181 B.R. 139 (Bankr.N.D.Ala.1995) where this Court held that an accountant owed a prepetition debt by the Chapter 11 debtor could not be hired as a general accountant for the debtor without a waiver of that debt.

Mr. Smith is likewise not an "insider." Section 101(31)(B) defines the term, if the debtor is a corporation, to include a director, officer, or person in control of the debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, or a relative of any of the aforementioned. Mr. Smith was none of those but was merely the attorney for the debtor and Mrs. Spahn, who is an insider of the debtor. But an attorney is not, absent some control over the debtor by the attorney, an insider simply by virtue of the normal attorney-client relationship. *In re Adam Furniture Industries, Inc.*, 158 B.R. 291, 297 (Bankr.S.D.Ga.1993); *Unsecured Creditors' Committee v. Miller & Martin (In re Seasons Properties)*, 141 B.R. 631, 633 (Bankr. E.D.Tenn.1992); *Bahas v. Sagen (In re Durkay)*, 9 B.R. 58, 60 (Bankr.N.D.Ohio 1981).

And finally, Mr. Smith, for the reasons stated in the main discussion, does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker. 11 U.S.C. § 101(14)(E). His interests, and the interests of the plaintiffs in the lawsuit, and the interests of the debtor's creditors

are all one and the same to generate a fund to pay creditors in this case.